PECK v GENERAL MOTORS CORPORATION

PANKOW v GENERAL MOTORS CORPORATION

Docket Nos. 85239, 87825. Submitted August 26, 1986, at Detroit. Decided December 7, 1987. Leave to appeal applied for.

Frank Peck, a millwright, and Peter Pankow, a toolmaker, worked for General Motors Corporation. Peck retired on June 1, 1982, and Pankow retired on December 21, 1979, and both began receiving nondisability benefits. Each thereafter petitioned for workers' compensation disability benefits alleging that he retired because of the inability to perform his job because of job-related injuries. The Workers' Compensation Appeal Board determined in both cases that the plaintiffs had met their burden of proving a work-related injury. In the *Peck* case, the WCAB also held that Peck had failed to sustain the burden in proving disability provided by MCL 418.373; MSA 17.237(373), which applied to retired employees who receive a nondisability pension, and denied benefits to Peck. In the *Pankow* case, the WCAB refused to give retroactive effect to § 373 and granted benefits to Pankow. Peck, in Docket No. 85239, and General Motors, in Docket No. 87825, appealed, by leave granted, from the decisions of the WCAB. The cases were consolidated on appeal.

The Court of Appeals *held:*

1. Since § 373 changed the presumption as it is applied to claimants collecting a nondisability pension, this is a procedural change and, as such, it should be given retroactive effect. It was error for the WCAB not to apply that section to Mr. Pankow's case. The *Pankow* case is remanded to the WCAB with instructions to give retroactive effect to § 373 and examine the record to see if Mr. Pankow overcame the presumption placed on him by that section.

2. The Legislature intended "suitable" work as used in § 373

REFERENCES

Am Jur 2d, Statutes §§ 347-355.

Am Jur 2d, Workmen's Compensation §§ 511-516, 608.

See the annotations in the Index to Annotations under Presumptions and Burden of Proof, Retrospective operation and Laws, and Workers' Compensation.

to be interpreted in light of educational or job training, types of job performed in the past, work experience, skill and knowledge acquired by training or experience, and the transferability of such skills to other employment.

3. To rebut the presumption of § 373, that a retired worker collecting a nondisability pension or nondisability social security benefits is not disabled, a workers' compensation claimant must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adopt or utilize job skills and such knowledge previously acquired.

4. The distinction which § 373 makes between claimants who are collecting a nondisability pension and those who are not has a rational basis. The classification does not deny equal protection.

5. The provision of § 373 does not constitute compensation, terms, conditions or privileges of employment within the meaning of 29 USC 623(a), the federal Age Discrimination in Employment Act, and the federal act is not applicable to this situation.

The decision of the WCAB in *Peck* is affirmed. The decision in *Pankow* is reversed and remanded to the WCAB.

1. WORKERS' COMPENSATION — CONTROLLING LAW — RETROACTIVITY — PROSPECTIVITY.

The law in effect at the time of the injury generally is applied in workers' compensation cases; one exception to the general rule of prospective application is when the new legislation clearly indicates an intention that it be given retroactive effect; another exception is where the change in the law is procedural.

2. STATUTES — PROCEDURAL STATUTES — RETROACTIVITY.

A remedial or procedural statute which does not destroy a vested right will be given retroactive effect where the injury or claim is antecedent to the enactment of the statute.

3. STATUTES — PRESUMPTIONS — PROCEDURE.

A presumption expressed in a statute is procedural, not substantive, in nature; therefore, any change or amendment to a presumption is also procedural.

4. WORKERS' COMPENSATION — PRESUMPTIONS — NONDISABILITY PENSIONS.

A provision of the Workers' Disability Compensation Act which

creates a rebuttable presumption that a workers' compensation claimant who is collecting a nondisability retirement pension or nondisability social security benefits is not disabled is procedural and thus may be given retroactive effect and be applied to persons injured before the effective date of the statute (MCL 418.373; MSA 17.237[373]).

5. WORKERS' COMPENSATION — PRESUMPTIONS — NONDISABILITY PENSIONS — DISABLED.

A retired worker who is receiving a nondisability pension or nondisability social security benefits is presumably not disabled; to rebut such presumption, a retired worker who is seeking workers' compensation benefits for a work-related injury must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired (MCL 418.373; MSA 17.237[373]).

6. WORKERS' COMPENSATION — PRESUMPTIONS — EQUAL PROTECTION.

A section of the Workers' Disability Compensation Act which creates a rebuttable presumption that a retired worker who is receiving a nondisability pension or nondisability social security benefits is not disabled does not violate the constitutional guarantee of equal protection (US Const, Am XIV; Const 1963, art 1, § 2).

7. WORKERS' COMPENSATION — PRESUMPTIONS — CONFLICT OF LAWS — PREEMPTION.

A provision of the Workers' Disability Compensation Act which creates a rebuttable presumption that a retired worker who is receiving a nondisability pension or nondisability social security benefits is not disabled does not constitute compensation, terms, conditions or privileges of employment as those terms are used in a federal Age Discrimination in Employment Act section prohibiting certain employment practices (29 USC 623; MCL 418.373; MSA 17.237[373]).

*Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.* (by *Barrie R. Bratt*), for Frank Peck.

*Bockoff & Zamler, P.C.* (by *Daryl Royal*), for Peter Pankow.

*Evans & Nelson, P.C.* (by *John J. Hays*), and *Willard W. Wallace,* in Docket No. 85239, and *John Rahie,* in Docket No. 87825, for defendant.

Before: MacKenzie, P.J., and Bronson and R. A. Benson,* JJ.

R. A. Benson, J. These two cases have been consolidated for appeal. In *Peck v General Motors Corp,* the plaintiff was granted leave to appeal from a determination by the Workers' Compensation Appeal Board that he did not meet the new burden in proving disability placed on him by MCL 418.373; MSA 17.237(373). In *Pankow v General Motors Corp,* the defendant, General Motors Corporation, was granted leave to appeal from a decision by the Workers' Compensation Appeal Board that allowed plaintiff to recover by denying retroactive effect to MCL 418.373; MSA 17.237(373).

STATEMENT OF FACTS: *PECK v GENERAL MOTORS CORP*

On November 14, 1983, a hearing referee determined that plaintiff, Mr. Peck, did not sustain his burden of proving that he is unable to perform work suitable to his qualifications, including training and experience. This decision was affirmed by the wcab on April 26, 1985. Leave to appeal was granted by this Court.

Before the hearing referee, plaintiff testified that he began to work for defendant on February 22, 1960, as a millwright, a skilled trade. On June 1, 1982, plaintiff retired and received a nondisability retirement from gmc. On September 7, 1982, the bureau received plaintiff's petition for disability benefits. Plaintiff stated he retired because, due to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

previous injuries, he couldn't handle the job anymore.

At the administrative hearing, plaintiff testified that a millwright was required to be able to read schematic sketches; to be proficient in the use of all metalworking hand tools; to be able to operate heavy equipment including trucks, cranes and bulldozers; to be able to do some welding; and to be able to operate some machine tools including saws, drill presses and grinders. The job also required the ability to use and read a micrometer. Testimony showed that the job also required plaintiff to work with other trades, hang steel, help build items made from steel and repair equipment. The evidence showed that plaintiff typically had to crawl up on machines, lift and replace guards, and lift pieces of steel weighing from seventy to one hundred pounds.

The medical testimony and examination of plaintiff by Edward S. Maxim, M.D., showed that in 1969 plaintiff fractured his right femur while on the job and has since had problems regaining movement in his right knee. In 1973, after suffering from back pains, a myelogram was done and subsequently plaintiff had a partial laminectomy and lost time at work. In 1982, plaintiff again lost time at work due to low-back pain and pain in his right leg. Plaintiff suffers from tenosynonitis of his left wrist as a consequence of a work-related injury which occurred while driving a lift truck.

Dr. Maxim stated that the combination of problems presented would, for all practical purposes, make plaintiff incapable of working as a millwright and probably would preclude most types of factory work. Specifically, the doctor indicated that plaintiff had marked restriction in bending and twisting his back, in placing any pushing or pulling strain on his back, and that lifting in excess of fifteen pounds is probably not possible. Plaintiff is

only capable of limited standing and walking on an alternative basis. Plaintiff should avoid squatting, kneeling and climbing, and is unable to use his left arm for any repetitive or forceful movements.

The testimony of Dr. Bernard J. Harris, M.D., was received by the hearing referee. Dr. Harris' testimony showed that plaintiff exhibited a slight limp due to discomfort in the right thigh, discomfort in the lower back in the midline with radiation into the right side and posterior aspect of the right knee and a thickness and an irregularity in the left wrist. Dr. Harris testified that Mr. Peck was partially disabled in the wrist and summarized that plaintiff has a moderate degree of disability, but further added, "If he had not retired, I feel his ability to continue at a millwright job was diminishing." The doctor further testified that he felt that Mr. Peck could do any kind of administrative job, sitting at a desk or doing a job that could be part-time standing or sitting, or a job restricting weight of lifting to twenty pounds or any type of bench work.

The hearing referee determined that plaintiff did not meet his burden and denied benefits. The wcab held that plaintiff had met the evidentiary standards for proving a work-related disability within his skill based on the standard of physical inability to perform all the jobs within his skilled trade; however, the wcab also held that plaintiff had failed to sustain the burden provided by MCL 418.373; MSA 17.237(373) which applies to retired employees collecting a nondisability pension. Accordingly, plaintiff was denied benefits.

STATEMENT OF FACTS: *PANKOW v GENERAL MOTORS CORP*

On February 27, 1981, a hearing referee found

that plaintiff had established by a preponderance of the evidence that he was disabled as a result of injuries arising out of, and during the course of, his employment with defendant. Except for a modification not pertinent to this case, that decision was affirmed by the WCAB. At the administrative hearing, the testimony showed that Mr. Pankow was hired by the defendant in 1954, that he retired on December 21, 1979, and that, at the time of the hearing in 1980, he was drawing a nondisability pension. The evidence further established that plaintiff was a skilled tradesman, i.e., a toolmaker. Mr. Pankow's normal skilled trade required that he work with heavy weights, some weighing in the neighborhood of four hundred to five hundred pounds. Although the evidence showed that normally a chain fall was used to lift these weights, it was often the case that three or four men would use brute strength to work with such heavy weights. Plaintiff also testified that, at times, he was required to lift weights up to eighty pounds without any help.

Plaintiff's first back problems started in 1963 and as a result of that injury he was on sick leave for some four months. He returned to the same job and, within three days, reinjured his back. He was again placed on sick leave for an additional two months. When he returned to work, he was placed on the same job.

He continued to have back problems and wore a back brace. In May of 1979, after lifting an eighty-pound tie bar fixture, plaintiff reinjured his back and was on sick leave for four months. He returned to work only when he was notified by defendant that his benefits would be discontinued. He returned to work, was put on the same job and, within three days, reinjured his back and was again on sick leave for an additional two months.

When he returned, he was placed on the same job with no job restrictions. Plaintiff then told his supervisor that he was going to retire because his back was bad and he could not stay on the job any longer. Plaintiff testified that his original plan was to retire at age sixty-five with full pension, but that he felt, under the circumstances, that was not possible.

An osteopathic doctor who testified for Mr. Pankow at the administrative hearing diagnosed Mr. Pankow as suffering from a chronic lumbar-sacral strain and S-1 radiculopathy. This doctor concluded that Mr. Pankow was disabled and that any continuation of his regularly assigned work would further accelerate the pathological process. A medical doctor also testified and indicated that plaintiff was suffering from osteoarthritis of his third, fourth, and fifth lumbar vertebrae with some signs of nerve pressure on the fourth and fifth nerve roots. This doctor also testified that Mr. Pankow was disabled. However, this doctor opined that the osteoarthritis was not due to his employment but was due to a metabolic process of aging. This doctor stated that plaintiff's problems were ones of aging and not of employment. Furthermore, this medical doctor concluded that plaintiff could return to his job since plaintiff had been working with this particular back condition for thirteen years. However, it would be advisable to restrict plaintiff to light bench work. As indicated earlier, the hearing referee found Mr. Pankow to be disabled and the WCAB affirmed this decision in part.

### DISCUSSION

One of the first issues to be decided is whether the provisions of MCL 418.373; MSA 17.237(373) should be given retroactive effect and thus be

applied to persons injured before January 1, 1982. We note that our Supreme Court has granted leave to appeal in *White v General Motors Corp,* 428 Mich 873; 402 NW2d 468 (1987), to consider this issue. The general rule is that the law in effect at the time of the injury controls. "It has long been the rule in Michigan that in workers' compensation cases the law in effect at the time of the relevant injury must be applied unless the Legislature clearly indicates a contrary intention." *Nicholson v Lansing Bd of Ed,* 423 Mich 89, 93; 377 NW2d 292 (1985). However, there are exceptions to the general rule of prospective application. One exception, obviously, is when the new legislation clearly indicates an intention to be given retroactive effect. That is not the case with § 373. Another exception to the general rule is where the change in the law is procedural. A remedial or procedural act which does not destroy a vested right will be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 570; 331 NW2d 456 (1982). A presumption is procedural, not substantive, in nature. *Cichecki v Hamtramck,* 382 Mich 428; 170 NW2d 58 (1969). Section 373 merely changes the standard of disability and the presumption which must be overcome. "If the presumption itself is procedural then any change or amendment to this provision will be also procedural." *Cichecki, supra,* p 436. Section 373 has previously been held to be procedural and has been given retroactive effect. *Wojciechowski v General Motors Corp,* 151 Mich App 399; 390 NW2d 727 (1986).

Since § 373 changes the presumption as it is applied to claimants collecting a nondisability pension, this is a procedural change and, as such, it should be given retroactive effect. It was error for

the WCAB not to apply that section to Mr. Pankow's case.

This determination requires then that this matter in connection with Mr. Pankow be remanded to the WCAB with instructions to that body to give retroactive effect to § 373 and to examine the record to see whether Mr. Pankow overcame the presumption placed on him by that section.

This determination makes it unnecessary to discuss the other issues raised by the defendant-appellant in the *Pankow* case.

The first issue raised by plaintiff-appellant Peck is that this Court should reverse the decision of the WCAB since there is no basis in fact for the board's findings that supervision, instruction, bench assembly or precision tool making are functions suitable to Mr. Peck's qualifications including training or experience as required by § 373.

It is well established in Michigan law that findings of fact in workers' compensation proceedings are conclusive in the absence of fraud. The standard of review to be applied is that the findings are conclusive if there is any evidence to support them. *Selk v Detroit Plastic Products,* 120 Mich App 135, 153; 328 NW2d 15 (1982), aff'd 419 Mich 1; 345 NW2d 184 (1984). While fact-finding by the WCAB cannot be reviewed by an appellate court, the compensation board's application of legal standards is properly reviewable on appeal. *Morris v Metals Engineering Mfg Co,* 122 Mich App 404, 407; 332 NW2d 495 (1983). This Court will reverse where the WCAB has operated within the wrong legal framework or has employed incorrect legal standards in reaching its decision. *McClain v Chrysler Corp,* 138 Mich App 723; 360 NW2d 284 (1984), lv den 422 Mich 914 (1985).

The determination whether there is other work which the plaintiff in this case could perform is a

finding of fact and will not be disturbed on appeal by this Court. However, the determination whether that work is suitable to plaintiff's qualifications, including training or experience, is a question of law which is reviewable.

The statute concerned in this appeal, effective as of January 1, 1982, states:

> An employee who terminates active employment and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the social security act, 42 U.S.C. 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this act are sought shall be presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease under either this chapter or chapter 4. This presumption may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4. [MCL 418.373; MSA 17.237(373).]

The legislative intent behind § 373 was to reform the statute and limit the number of retired workers who were eligible to collect compensation along with a nondisability retirement. *Franks v White Pine Copper Division,* 422 Mich 636, 657; 375 NW2d 715 (1985). In order to ascertain the legislative intent, we must give to words which are not otherwise defined their ordinarily understood meaning. Therefore, in determining what the Legislature meant by work "suitable to the employee's qualifications," we must define the word "suitable" in its ordinary sense and meaning. *Webster's*

*Ninth New Collegiate Dictionary* defines "suitable" to mean "adapted to a use or purpose." The same dictionary defines "adapt" as: "to make fit (as for a specific or new use or situation often by modification)." As the majority of the WCAB pointed out in its opinion:

> The rationale for the adoption of this amendment strongly infers the legislative intention of limiting benefits to retirees already receiving various forms of compensation and calls for a reasonable definition of "suitable work" as being *any job, within or without his field of skill,* for which plaintiff is qualified by virtue of his training or experience as a millwright, to which he can transfer, adapt, or utilize those skills and knowledge.

This Court feels that this portion of the WCAB's decision correctly states the legislative intent. Plaintiff would have us hold that the rebuttal of the statutory presumption could be accomplished simply by showing that plaintiff had an inability to perform work within his skill and would ignore the worker's ability to adapt his skill to other jobs outside of his chosen field. In determining when an employee has suffered the industrial loss of use of an extremity, the courts have ignored the historical distinction between fields of skilled and unskilled employment. In cases where the employee is claiming a loss of industrial use of an arm or leg, inquiry by the courts was not limited to whether, in the case of a skilled employee, there was a loss of use only in the skilled trade. Rather, the inquiry was directed to whether there was a loss of use in all reasonable employments within or without the field of skill. For example, in *Hutsko v Chrysler Corp,* 381 Mich 99; 158 NW2d 874 (1968), plaintiff argued that, since his injury to his hand had precluded him from continuing his skilled

employment as a millwright, he had therefore lost the industrial use of his hand. The plaintiff in that case pointed to the historical recognition of a distinction between skilled and unskilled labor. While recognizing that the distinction existed, the Supreme Court refused to apply it where the loss of industrial use of an extremity was being claimed. Similarly, in *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974), the Court held that compensation on a claim of loss of industrial use of the legs could be awarded only upon a showing of inability to use the legs to perform any reasonable employment. Therefore, there is legal precedent for a legislative enactment which would require the factfinder to look not only to the employee's field of particular skill, but to look at the employee's ability to work at any job for which the employee's skills could be adapted. The statute refers specifically to suitability in terms of the employee's *qualifications* including training or experience. Obviously, used in that connection, the Legislature intended the word "suitable" to be interpreted in light of educational or job training, types of job performed in the past, work experience, skills and knowledge acquired by training or experience, and the transferability of such skills to other employment.

When the word "suitable" is interpreted in this manner, the presumption against loss of earnings or earning capacity as the result of a work-related injury or disease is not rendered meaningless and plaintiff's burden of rebutting such presumption is clearly spelled out.

Relevant inquiries under § 373(1) are: What is the retired employee's residual physical capacity after his work-related injury? What skills and knowledge has he acquired through training or experience? Are these skills transferable to other

types of occupations? Are there other jobs to which his skills and knowledge can be transferred within his physical capacity to perform? Under this analytical framework, the retired claimant's burden of rebutting the presumption is twofold: (1) he must establish that he has physical restrictions resulting from a work-related injury or disease, and (2) that these restrictions render him unable to perform work, within or without his field of skill, that is otherwise "suitable to his qualifications." In other words, a retired worker must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired.

Plaintiff argues that § 373(1) should be interpreted in such a manner that the existence of experience in another skill or trade and a continued ability to work would be the only evidence that would defeat an award of compensation. Plaintiff argues that this section should only be construed to bar compensation to an injured retiree when the retiree truly has an alternative skill or trade, not simply some of the skills necessary therefor, and has failed to prove additionally an inability to perform work in the alternative field. Such an interpretation of the clause would unduly restrict what appears to be the legislative intent to narrow disability benefits for persons who have received or are receiving nondisability retirement benefits. It appears under plaintiff's proposal that there would be few retired skilled employees who would be barred from receipt of workers' compensation benefits, and that no unskilled employees would be barred. By the very definition of an

unskilled employee, such an employee would have no alternative skill or trade which he could perform and therefore would be entitled to benefits. Plaintiff, in arguing this interpretation, tends to set up two separate classifications (skilled and unskilled), but there is nothing in the statute which indicates that that was the legislative intention. We note that case law in other areas of the Workers' Disability Compensation Act has recognized this dichotomy, but we find nothing within the legislative history of § 373(1) which would show that the Legislature intended to engraft such a distinction in this particular section. The standard adopted by the WCAB majority judges all retired workers drawing nondisability benefits by the same standard regardless of their field of employment and regardless of their particular skill or lack of skill. And while there is no question that, under the test adopted here today, skilled workers will have a more difficult time convincing the trier of fact that there is no suitable work for which they are qualified and that they can perform because of their disability, the retirees who are truly disabled within the purview of § 373(1) will receive workers' compensation payments.

It should be further pointed out that even those who cannot rebut the presumption contained in § 373(1) nevertheless will be eligible for medical care. MCL 418.373(2); MSA 17.237(373)(2).

Plaintiff also raises the issue whether this section is void as creating age discrimination in contravention of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because § 373 creates the presumption that a retired worker collecting a nondisability pension or nondisability social security benefits is

not disabled, plaintiff Peck claims this classification is based on age and discriminates against the elderly since, regardless of whether the employee's retirement is based on his age or his time of service with his employer, there is an unequal impact on elderly employees. Plaintiff admits that age itself is not a suspect class requiring strict scrutiny of the constitutionality of the classification created. However, plaintiff does argue that the same scrutiny applied in classifications based on gender should be applied where classifications are based upon age. The existing standard, when the basis of the classification is on age, is stated in *Massachusetts Bd of Retirement v Murgia,* 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976). *Murgia* involved a state law which required mandatory retirement for uniformed members of the state police at age fifty. The United States Supreme Court held that the equal protection analysis required the strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class, *Murgia, supra,* p 312.

In *Murgia,* the United States Supreme Court, while recognizing that the aged of this nation have not been wholly free from discrimination, concluded that they have not been discriminated against historically, or placed or relegated to such a position of political powerlessness, or saddled with such disabilities, or subjected to such a history of purposeful unequal treatment as persons who have been discriminated against on the basis of race or national origin. This Court sees no reason to expand upon the rationale of the *Murgia* case and, since strict scrutiny is inapplicable, the statute involved must only pass a rational basis test. Legislative action in creating necessary classi-

fications is presumed to be valid. Furthermore, the
United States Supreme Court has said:

> This inquiry (rational basis) employs a relatively
> relaxed standard reflecting the Court's awareness
> that the drawing of lines that create distinctions is
> peculiarly a legislative task and an unavoidable
> one. Perfection in making the necessary classifica-
> tions is neither possible nor necessary. [*Murgia,
> supra,* p 314.]

The challenged distinction which § 373 makes is
between those employees who are collecting a
nondisability pension and those who are not. The
history behind enactment of § 373 relates that
there was a concern that a disproportionate
amount of the total workers' disability compensa-
tion paid out by some of the major employers of
this state went to employees collecting nondisabil-
ity retirement benefits. The presumption found in
§ 373 reflects the legislative intent to limit the
ability of retirees collecting nondisability pensions
from also collecting workers' compensation. This
allows a greater amount of compensation to be
paid to younger employees who are unable to
collect company retirement benefits and to create
a sound economic environment within the state
since Michigan is in the unique position of allow-
ing retired employees to collect compensation
along with nondisability pensions. Such a statu-
tory presumption may be an imperfect solution to
the problems faced by Michigan employers and the
disabled workers, but there is a rational basis for
the classification created. Such a classification is
exclusively within the legislative prerogative and
does not deny equal protection of the law as guar-
anteed by the Fourteenth Amendment to the
United States Constitution.

Is § 373 void as creating age discrimination in

contravention of the Equal Protection Clause of Const 1963, art 1, § 2? The Michigan courts have held that the equal protection guarantee of the Michigan Constitution is applied under the same standards as the corresponding provision of the federal constitution and that age is not a suspect classification for equal protection purposes under the Michigan Constitution. *Cruz v Chevrolet Grey Iron Division,* 398 Mich 117; 247 NW2d 764 (1976); *People v Jacqueline Walker,* 135 Mich App 267, 276; 354 NW2d 312 (1984), lv den 421 Mich 860 (1985).

Plaintiff Pankow analogizes the present situation to that faced by the Supreme Court in *Fox v Employment Security Comm,* 379 Mich 579; 153 NW2d 644 (1967). In the *Fox* case, the Michigan Supreme Court held that a classification that denied unemployment benefits to a worker collecting weekly workers' disability compensation, but allowed unemployment benefits to a worker who had taken a lump-sum payment in lieu of weekly disability compensation, had no rational basis and was a denial of equal protection. Mr. Pankow claims that a nearly identical situation is presented here since § 373 would apply to a worker who is not in a position to collect a disability pension (e.g., his employer did not offer one or he was over sixty-five and Social Security, by law, could not give him one), whereas an identically disabled worker who was eligible for a disability pension would not have the presumption of § 373 applied to him or her.

The Supreme Court stated in *Fox, supra,* p 588:

> In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in which it is found.

In this instance, there is a relationship between the purposes of § 373 and the classification it creates. Section 373 is a legislative attempt to make it more difficult for retirees collecting non-disability pensions from also collecting workers' compensation. The classification creates a presumption which can be rebutted by a preponderance of the evidence that the employee is disabled from doing work suitable to his qualifications including training or experience. Appellate courts do not sit as super legislatures. If there is some rational basis for the legislation, it must be sustained. *McDonald Pontiac-Cadillac-GMC, Inc v Prosecuting Attorney for the Co of Saginaw,* 150 Mich App 52; 388 NW2d 301 (1986), lv den 426 Mich 867 (1986). Furthermore, perfection in making the necessary classifications is neither possible nor necessary. *Murgia, supra,* p 314. There is a rational basis for § 373 and the classification created by § 373 has a reasonable relationship to the legislative purpose.

> [I]n the face of a due process or equal protection challenge, "where the legislative judgment is drawn in question," the court's inquiry "must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." *United States v Carolene Products Co,* 304 US 144, 154; 58 S Ct 778; 82 L Ed 1234 (1938). A corollary to this rule is that where the legislative judgment is supported by "any state of facts either known or which could reasonably be assumed," although such facts may be "debatable," the legislative judgment must be accepted. *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936). [*Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978), reh den 403 Mich 958 (1978), cert den 442 US 934 (1979).]

Section 373 provides a rational basis for the

legislators' intent of making it more difficult for a retiree collecting a nondisability pension to also collect workers' compensation and, as such, does not violate Michigan's prohibition against unequal treatment.

Plaintiff Peck also argues that § 373 discriminates on the basis of age with respect to compensation and, as such, violates the federal Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq.* If plaintiff Peck's argument is correct, then the Supremacy Clause of the United States Constitution would dictate that ADEA should prevail over § 373, thereby making the latter section void and unenforceable. The ADEA addresses discrimination by employers against employees. The Workers' Disability Compensation Act is a uniform system of compensation mandated by the state and not by the employer. Other jurisdictions which have considered the matter have held that state workers' compensation law provisions do not constitute compensation, terms, conditions or privileges of employment within the meaning of 29 USC 623. For example, see *O'Neal v Dep't of Transportation,* 442 So 2d 961 (Fla App, 1983). While employers may be subject to the provisions of the Workers' Disability Compensation Act, other than legislative input that any citizen has, they have no control over its provisions and are bound by it just as the employee is. It is significant that the Department of Labor's interpretation of this federal statute, contained in 29 CFR 860.1 *et seq.* (1983), implicitly supports the argument that the prohibitions of 29 USC 623(a) are limited to employment practices within the control of the employers and do not encompass governmental actions such as workers' compensation laws. 29 CFR 860.120(e) (1983) addresses the relationship of employer-provided benefits and government-provided benefits.

This subsection explicitly recognizes that the availability of government benefits, e.g., Medicare, may be based on age. This Court sees little distinction for purposes of the ADEA between governmental enactments which provide for benefits to be paid by the government and governmental enactments which provide for benefits to be paid by others. We therefore hold that the provision of the workers' disability law does not constitute compensation, terms, conditions or privileges of employment within the meaning of 29 USC 623 and that that federal act is not applicable to this situation.

The decision of the WCAB is affirmed in the *Peck* case. The decision of the WCAB in the *Pankow* case is reversed and the case is remanded for further proceedings in conformity with this opinion.

BRONSON, J., did not participate.