## HOLBROOK v GENERAL MOTORS CORPORATION

Docket No. 138206. Submitted March 3, 1994, at Lansing. Decided April 19, 1994, at 9:30 A.M.

Helen L. Holbrook sought workers' disability benefits both for her hypertensive condition and for loss of industrial use of her right eye, alleging that both conditions arose out of and in the course of her employment with General Motors Corporation. The defendant claimed that the plaintiff was not disabled, that her conditions had not arisen in the course of her employment, and that it was entitled to the retiree presumption of § 373 of the Workers' Disability Compensation Act, MCL 418.373; MSA 17.237(373), because the plaintiff had taken a nondisability retirement. A hearing referee denied the plaintiff's claim for benefits. The Workers' Compensation Appeal Board reversed, finding that job-related stress had aggravated the plaintiff's preexisting hypertension and that the hypertensive condition caused or contributed to the loss of the industrial use of her right eye, and entered a closed award of benefits for the specific loss of the industrial use of the eye and an open award of general disability benefits. The defendant appealed by leave granted.

The Court of Appeals *held:*

1. The appeal board's finding that the plaintiff had lost industrial use of her right eye is supported by competent medical testimony and, therefore, is conclusive and may not be disturbed on appeal.

2. Section 373 creates a presumption that a retiree does not suffer a loss of earnings or earning capacity because of a compensable injury or disease. Because an award of benefits for a specific loss is not dependent upon the loss of earnings or earning capacity, the retiree presumption is not applicable to a claim for specific loss benefits.

3. Because an award for a specific loss neither presumes a loss of earnings nor precludes continued employment during the period of the award for a specific loss, the question whether

REFERENCES

Am Jur 2d, Workers' Compensation §§ 395, 414.
See ALR Index under Workers' Compensation.

an employee terminated active employment to receive a nondisability pension, and is thus subject to the retiree presumption, is separate from the question whether the employee is entitled to an award for a specific loss.

4. The record does not support the appeal board's conclusion that the plaintiff's problems with her right eye prevented her from performing any work for which she was qualified. Accordingly, the open award of general disability benefits is reversed.

5. The appeal board did not address whether the defendant demonstrated that the plaintiff is receiving a nondisability pension or retirement benefits paid by it or on its behalf or that she terminated active employment. On remand, the appeal board must address that question.

Reversed in part and remanded.

WORKERS' COMPENSATION — PRESUMPTIONS — NONDISABILITY PENSION — SPECIFIC LOSS BENEFITS.

The provision of the Workers' Disability Compensation Act creating a presumption that a retiree does not suffer a loss of earning capacity because of a compensable injury or disease is not applicable to an award of benefits for a specific loss (MCL 418.373; MSA 17.237[373]).

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Roberta H. Pullum*), for the plaintiff.

*Munroe & Nobach, P.C.* (by *Cameron C. McComb*), for the defendant.

Before: MACKENZIE, P.J., and GRIBBS and M. E. DODGE,* JJ.

PER CURIAM. Defendant appeals by leave granted from an order of the Workers' Compensation Appeal Board granting plaintiff specific loss benefits for the loss of industrial use of her right eye as well as an open award of general disability benefits. We reverse in part and remand for further proceedings.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

Plaintiff worked for defendant from August 1944 until her retirement on June 30, 1983, a few months short of her fifty-eighth birthday. Sometime between 1976 and 1977 she developed high blood pressure, and in 1978 she developed problems in her right eye. In January 1983, plaintiff was transferred to a new unit where, she testified, she experienced daily anxiety and frustration. During this period, a blood vessel in her eye burst, and she began to suffer headaches. After approximately two weeks, plaintiff was transferred to another unit. She testified that her headaches continued, that her vision got progressively worse, and that all she could see was a blur.

Plaintiff retired on June 30, 1983. She testified that her vision remains blurred and that she cannot see well enough to work. However, on cross-examination she admitted that she did not have to wear glasses, that she does not have a restricted driver's license, and that she sees well enough to drive by herself.

Dr. Glen Sullenger, an opthalmologist, testified by way of deposition that he had treated plaintiff since 1977. He diagnosed her condition as hypertensive retinopathy and a vascular occlusion that worsened when the blood vessel broke in her right eye. Dr. Sullenger found that plaintiff's right eye vision had decréased to 20/200, while her left vision remained 20/20. He opined that her vision is not correctable and that neither the hypertensive retinopathy nor the vein occlusion is reversible. On cross-examination Dr. Sullenger admitted that hypertensive retinopathy is only one possible explanation of plaintiff's vascular occlusion and that arteriosclerosis could be an alternative explanation.

Dr. Helen Winkler, an internist, examined plain-

tiff and diagnosed her as suffering from hypertension caused by work stress. She opined that this contributed to hypervision in plaintiff's right eye.

On the basis of a separate examination of plaintiff, internist Dr. Leon Friedman diagnosed plaintiff as suffering from mild hypertension, which he believed was more related to plaintiff's weight than her work. In his opinion, plaintiff would be able to do the work that any healthy, fifty-eight-year-old woman could perform. However, he noted that his opinion did not take into consideration plaintiff's right eye problem, which he was not competent to diagnose.

The hearing referee denied plaintiff's claim for benefits. Plaintiff appealed, and, in a two-to-one decision, the WCAB reversed. The majority found that plaintiff had demonstrated by a preponderance of the evidence that the stress and anxiety that she experienced at work aggravated a preexisting condition of hypertension and caused or contributed to hypertensive retinopathy and vascular occlusion. Relying on the opinions of Dr. Sullenger and Dr. Winkler, the WCAB majority found that plaintiff had lost the industrial use of her right eye and so was entitled to 162 weeks of specific loss benefits pursuant to § 361(2)(l) of the Workers' Disability Compensation Act (WDCA), MCL 418.361(2)(l); MSA 17.237(361)(2)(l).

Because plaintiff retired on June 30, 1983, the retiree presumption of § 373(1) of the WDCA, MCL 418.373(1); MSA 17.237(373)(1), applies. That section states in part:

An employee who terminates active employment and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the social security act, 42

USC 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this act are sought shall be presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease under either this chapter or chapter 4. This presumption may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4.

The WCAB majority found that plaintiff successfully rebutted this presumption for the following reasons:

Using the 2 prong test as numerated in *Peck v General Motors,* 164 Mich App 580, 593 [417 NW2d 547 (1987)], the retired plaintiff must meet the following criteria:

"(1) he must establish that he has physical restrictions resulting from a work related injury or disease, and;

(2) that these restrictions render him unable to perform work, within or without his field of skill, that is otherwise suitable to his qualifications."

Based on this Board's prior determination that plaintiff's injury was causally related to her employment and relying on the testimony of Dr. Sullenger and Dr. Winkler, it is this Board's opinion that plaintiff has met each prong of the test. Dr. Sullenger has stated that plaintiff's right eye vision deteriorated to 20/200 as of January, 1984 [sic] and Dr. Winkler has stated that plaintiff is unable to return to her prior employment. Addressing her ability to perform work, within or without her field of work, which presumably is factory work, Dr. Friedman, doctor called on behalf of defendant, in reference to his comment "I assume that she has enough vision to perform

some of the common jobs", replied when asked more specifically regarding the issue,

"Obviously, if you can't see what you're doing, you can't do it."

We find that plaintiff has met each prong of the *Peck* test; thus, plaintiff has overcome the presumption of section 373.

## II

Defendant contends that the WCAB erred in finding that plaintiff has lost the use of her right eye as a result of her employment with defendant. We disagree. Under § 361(2)(1), plaintiff is entitled to 162 weeks of benefits if she can establish that she has lost eighty percent of the vision of one eye. The testimony of Dr. Sullenger and Dr. Winkler constitutes competent record evidence supporting the WCAB's findings. Those findings are therefore conclusive and may not be disturbed on appeal. *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986).

## III

Defendant contends that the WCAB majority erred in holding that plaintiff had rebutted the retiree presumption. Plaintiff, on the other hand, argues that the effect of the retiree presumption on specific loss benefits and general disability benefits must be considered separately and that the presumption does not apply to specific loss benefits. We agree with plaintiff and hold that the retiree presumption is not applicable to specific loss benefits.

Two types of benefits are available under Michigan's workers' compensation system. General discharge or wage loss benefits depend upon proof of

lost wage-earning capacity as a result of personal injury or occupational disease. Specific loss benefits are paid pursuant to a statutory schedule of losses upon proof of the loss, irrespective of loss of earnings or earning capacity. An employee who proves a specific loss is entitled to benefits during the statutory period regardless of whether the employee receives greater or less wages during that period. *Lindsay v Glennie Industries, Inc,* 379 Mich 573, 578; 153 NW2d 642 (1967); *Hutsko v Chrysler Corp,* 381 Mich 99, 102; 158 NW2d 874 (1968); *Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 666; 189 NW2d 304 (1971).

Section 373(1) provides that a retired employee is "presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease." Because an employee is entitled to specific loss benefits regardless of whether the employee has lost earnings or earning capacity, the retiree presumption is not applicable to claims of specific loss. Because we have upheld the WCAB's conclusion that plaintiff has proven the specific loss of her right eye, she is entitled, at least, to the 162 weeks of benefits available under § 361(2)(l).

Plaintiff argues that because the disability on account of her specific loss is presumed to have continued for 162 weeks, she cannot be considered to have terminated active employment under § 373 because by the time the 162 weeks elapsed she was no longer actively employed. This argument assumes that the disability during the specific loss period prevents an employee from being actively employed. However, as noted above, there is no reason why an individual cannot be employed and earning a wage while receiving specific loss benefits. The question whether an employee terminated active employment to receive a nondisability pension is therefore separate from the question

whether the employee is entitled to specific loss benefits.

In order for plaintiff to be entitled to general disability benefits after her specific loss benefits are exhausted, she must defeat the presumption of § 373(1). In *Peck v General Motors Corp,* 164 Mich App 580, 593; 417 NW2d 547 (1987), this Court analyzed the nature of plaintiff's burden:

> Under this analytical framework, the retired claimant's burden of rebutting the presumption is twofold: (1) he must establish that he has physical restrictions resulting from a work-related injury or disease, and (2) that these restrictions render him unable to perform work, within or without his field of skill, that is otherwise "suitable to his qualifications." In other words, a retired worker must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired.

Although the WCAB majority purported to apply *Peck,* its reasoning and conclusion were wholly inadequate. The majority appears to rely solely on the remark of Dr. Friedman, who admitted that he was not competent to assess plaintiff's vision, to the effect that "if you can't see what you're doing, you can't do it." The record clearly demonstrates, however, that plaintiff could see what she was doing, albeit not as well as she had previously. Plaintiff has admitted that she drives an automobile by herself on an unrestricted license, and her former supervisor testified that she performed her last work very well and never lodged any com-

plaints with him. Because the record does not support a finding that plaintiff's problems with her right eye prevent her from performing any work, either within or without her field of skill, for which she is qualified by virtue of her prior training or experience, we reverse the award of general disability benefits.

IV

In *Brown v Beckwith Evans Co,* 192 Mich App 158, 169, 179; 480 NW2d 311 (1991), this Court held that an employer must first prove that § 373 is applicable before an employee is required to rebut the retiree presumption by a preponderance of the evidence. An employer therefore must demonstrate that the employee is receiving nondisability pension or retirement benefits that were paid by or on behalf of the employer. The employer must also prove that the employee terminated active employment. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741; 453 NW2d 301 (1990); *Dezwaan v Holland Motor Express,* 189 Mich App 575, 579-580; 473 NW2d 788 (1991).

Plaintiff contends that defendant has not met its burden in this case of proving any of these requirements. Although plaintiff did not raise this issue below, we note that the decisions of this Court defining the nature of an employer's burden in this regard were decided after the WCAB had rendered its decision in this case. Because it appears that the WCAB did not consider this issue, we remand for further proceedings in light of *Brown, Frasier,* and *Dezwaan.*

Reversed in part and remanded. We retain no further jurisdiction.