WRIGHT v VOS STEEL COMPANY

Docket No. 142909. Submitted February 15, 1994, at Detroit. Decided
June 20, 1994, at 9:25 A.M.

William Wright sustained a work-related injury while employed
by Vos Steel Company in a skilled position, returned to work
for Vos in an unskilled position, and received voluntary pay-
ments of worker's compensation benefits calculated pursuant to
MCL 418.301(5)(b); MSA 17.237(301)(5)(b) at eighty percent of
the difference in the after-tax weekly wages of the skilled and
unskilled positions. Wright petitioned the worker's compensa-
tion bureau for one hundred percent of wage loss from the
skilled position, claiming that case law dating back to *Geis v
Parkland Motor Car,* 214 Mich 646 (1921), provides that, unlike
an unskilled worker, a skilled worker who is unable to return
to work in the worker's area of skill is totally disabled and
entitled to full benefits even though able to earn a salary as an
unskilled worker. A hearing referee ruled against Wright, and
the Worker's Compensation Appeal Board affirmed. Wright
appealed to the Court of Appeals by leave granted.

The Court of Appeals *held:*

Amendments of § 301 and other sections of the worker's
compensation act, beginning with those enacted with 1982 PA
32, have eliminated the distinction between skilled and uns-
killed workers for purposes of computing weekly wage-loss
benefits of disabled workers who resume work after incurring
disability. Any worker who suffers a disability, defined as a
limitation of wage-earning capacity resulting from work-related
injury or disease, and works after the disability is entitled to
eighty percent of the difference between the worker's after-tax
weekly wage before the disability and the after-tax weekly
wage that the employee is able to earn after the disability,
subject to the maximum weekly rate as determined under MCL
418.355; MSA 17.237(355).

Affirmed.

REFERENCES

Am Jur 2d, Workers' Compensation §§ 379-381, 395, 397.
See ALR Index under Workers' Compensation.

WORKER'S COMPENSATION — DISABILITY — WEEKLY WAGE-LOSS BENE-
    FITS.
    A worker, regardless of whether skilled or unskilled, who sus-
    tains a disability but continues to work is entitled to weekly
    wage-loss benefits of eighty percent of the difference between
    the worker's after-tax weekly wage before the disability was
    incurred and the after-tax weekly wage that the worker earns
    after the disability, but the benefits cannot exceed the maxi-
    mum weekly rate of compensation as determined under MCL
    418.355; MSA 17.237(355) (MCL 418.301[5][b]; MSA 17.237[301]
    [5][b]).

*Robb, Messing & Palmer, P.C.* (by *Charles W. Palmer*), for the plaintiff.

*Carl Mitseff,* for the defendant.

Before: CORRIGAN, P.J., and J. H. GILLIS, SR.,* and C. H. STARK,** JJ.

J. H. GILLIS, SR., J. Plaintiff appeals by leave granted from a June 26, 1991, opinion and order of the Worker's Compensation Appeal Board that affirmed the decision of a hearing referee regarding the amount of compensation owed to plaintiff. We affirm.

The facts in this case are essentially undisputed. Plaintiff was employed by defendant as a maintenance worker in the early 1980s. As part of his duties, plaintiff was obligated to operate and repair various machinery. The parties agree that plaintiff was a "skilled" worker for purposes of the Worker's Disability Compensation Act. On April 16, 1984, plaintiff was injured in the course of his employment when a piece of steel fell on his foot. In December, 1984, plaintiff returned to work for defendant in unskilled work at a lower wage than

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

that which he had earned as a maintenance worker. Defendant voluntarily paid benefits to plaintiff, albeit at only eighty percent of plaintiff's wage loss as calculated by application of MCL 418.301(5)(b); MSA 17.237(301)(5)(b).

Plaintiff filed a petition in the Bureau of Worker's Disability Compensation, claiming that because he was a skilled worker at the time of the injury, he was entitled to one hundred percent of the wage loss he experienced, despite the fact that he had accepted favored work in an unskilled field. Plaintiff based his assertion on the historical distinction recognized by the courts between skilled and unskilled workers. Specifically, plaintiff claimed that case law suggested that a skilled worker who was unable to return to work as a skilled worker was totally disabled and entitled to full benefits even though the worker may be earning a salary as an unskilled employee. See *MacDonald v Great Lakes Steel Corp,* 268 Mich 591, 594-595; 256 NW 558 (1934); *Geis v Packard Motor Car Co,* 214 Mich 646; 183 NW 916 (1921); *Peck v General Motors Corp,* 164 Mich App 580, 591-592; 417 NW2d 547 (1987).[1]

Defendant claimed that any historical distinction between the two types of workers had been abrogated by the post-1980 amendments of the WDCA and that the Legislature clearly intended to provide the same percentage of compensation to injured employees for after-tax wage disparity, regardless of the skill of the worker. After a hearing, the referee rendered a decision that the bureau mailed on February 12, 1987. In that decision, the referee held that the amendments of the

---

[1] Reference was also made to the distinction in *Sobotka v Chrysler Corp (On Rehearing),* 198 Mich App 455, 462-463; 499 NW2d 777 (1993), lv gtd 443 Mich 869 (1993). However, that issue was admittedly a "background issue" and was not outcome determinative.

act effectively abolished any court-made distinction between the skill levels of injured workers. The referee concluded that there was nothing in the WDCA to justify a distinction between skilled and unskilled workers in this regard. In a subsequent appeal to the WCAB, the board affirmed that holding. It is from the June 26, 1991, WCAB decision that plaintiff now takes this appeal.

This Court and our Supreme Court have historically recognized a distinction between skilled and unskilled employees. See *MacDonald, supra* at 594-595; *Geis, supra; Peck, supra* at 591-592. In *Geis, supra,* our Supreme Court concluded that where a skilled employee was totally disabled in the field of the employee's skill, that employee was entitled to full benefits, despite the fact that the employee may be able to earn wages at an unskilled job that was closely related to the skilled job. See *Geis, supra* at 651. Other courts have followed that decision, as has the bureau and the WCAB in numerous cases. In fact, as plaintiff points out, the stipulation sheets used in the bureau continue to recognize the distinction.

In a comprehensive revision of the WDCA, the Legislature amended a number of sections in the statute to become effective in 1982. See 1980 PA 357, as amended by 1982 PA 32 and 1981 PA 200. In 1982, the first definition of disability appeared in the act. See *Rea v Regency Olds/Mazda/Volvo,* 204 Mich App 516, 521; — NW2d — (1994). That section provided in part as follows:

> As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease. [MCL 418.301(4); MSA 17.237(301)(4).]

This section has been subsequently amended by

1987 PA 28, but that amendment has no effect in this case because the injury at issue occurred before the amendment. See *Rea, supra* at 521-522.

Along with the addition of a definition of "disability" in the 1982 amendments, the Legislature added the following section:

> (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> * * *
>
> (b) If an employee is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 355. [MCL 418.301(5)(b); MSA 17.237(301)(5)(b).]

As the referee and the WCAB point out, nothing in the WDCA indicates an intent to distinguish between skilled and unskilled employees for the purpose of computing compensation under this section. Nor does there appear to be any distinction between skilled and unskilled workers for the purpose of determining whether a disability has taken place.[2]

---

[2] MCL 418.361(1); MSA 17.237(361)(1) was also amended effective January 1, 1982, to read as follows:

> While the incapacity for work resulting from a personal injury is partial, the employer shall pay, or cause to be paid to the injured employee weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax

Plaintiff claims that the distinction between skilled and unskilled workers survived the amendments of the legislation and that the Legislature merely sought to increase the percentage of wage-loss compensation from the prior two-thirds to the eighty percent encompassed in the amended sections. We disagree.

In construing the legislation at issue, we are reminded of the general principles of statutory construction. When interpreting a statute, we are obligated to determine and give effect to the intent of the Legislature. *Gorte v Dep't of Transportation,* 202 Mich App 161, 166; 507 NW2d 797 (1993). If the meaning is clear, judicial construction is neither necessary nor permitted. *Id.* A change in the statutory language is presumed to reflect a change in the meaning. *Id.* at 167. In construing a statute, we must give the language a valid and reasonable construction that reconciles inconsistencies and gives effect to all the parts. *Nelson v Transamerica Ins Services,* 441 Mich 508, 514; 495 NW2d 370 (1992) (quoting *Girard v Wagenmaker,* 437 Mich 231, 238; 470 NW2d 372 [1991]).

Having reviewed the amendments of the sections of the statute at issue, we too are persuaded that the Legislature intended to apply a uniform rate of wage-loss compensation to an injured employee, regardless of status as a skilled or unskilled employee at the time of the injury.[3] As the

average weekly wage which the injured employee is able to earn after the personal injury, but not more than the maximum weekly rate of compensation as determined under section 355. Compensation shall be paid for the duration of the disability.

This section, governing the partial disability of a worker, also makes no distinction between skilled and unskilled workers.

[3] To the extent that *Rea, supra,* concludes that the 1982 amendments represented little or no change in existing law, we disagree with that statement. See *Rea, supra* at 521. The 1982 amendment was not at issue in *Rea* and any statements regarding the effect of the 1982 amendments are dicta.

WCAB concluded, had the Legislature intended to exclude from MCL 418.301(5)(b); MSA 17.237(301) (5)(b) skilled workers who are disabled but still able to find unskilled work, it could easily have done so. At the time that plaintiff was injured, that section read that if disability is established under § 301(4), then the entitlement to wage-loss benefits *shall be determined* pursuant to that section. In our opinion, this language indicates an intent to place all injured employees in one group, regardless of their skill levels.

At least one expert in the field agrees that the amendments of the statute eliminated the distinction between skilled and unskilled employment for purposes of computing the weekly benefit. See Welch, Worker's Compensation in Michigan: Law & Practice, §§ 8.6, 8.12, 15.3-15.5. Welch stated:

> The 1982 and 1987 amendments resolved at least part of this problem. It now seems clear that the same definition of disability applies to both skilled and unskilled workers.
>
> *     *     *
>
> . . . The new sections spell out how benefits should be paid in the case of a worker who returns to work with a partial wage loss. No reference is made to the old distinction between workers with a total or partial disability as opposed to a total or partial wage loss. Since this section is more specific and more recent it would seem that all workers are now paid according to this formula whether or not they would be defined as totally or partially disabled. [Welch, *supra,* § 8.12, p 8-15.]

We agree with Welch's comments, and will not read an exception into the statutory framework that does not exist in the language.

Affirmed.