FRASIER v MODEL COVERALL SERVICE, INC

Docket No. 110458. Submitted December 12, 1989, at Grand Rapids. Decided March 20, 1990.

Eugene L. Frasier, an employee of Model Coverall Service, Inc., for thirty-nine years, was diagnosed as having a torn rotator cuff in his right shoulder in July, 1985. His last day of work was July 25, 1985. Model Coverall voluntarily paid workers' compensation benefits to Frasier. On January 31, 1986, Frasier retired under an early, reduced nondisability retirement plan available through Model Coverall. The pension administrator coordinated Frasier's workers' compensation benefits with his retirement benefits as required by the workers' compensation act. On May 23, 1986, Model Coverall stopped Frasier's workers' compensation benefits, claiming his disability did not meet the criteria to overcome the statutory presumption of no loss of wage-earning capacity upon a claimant's receipt of nondisability retirement benefits. Frasier filed a claim for disability compensation benefits with the Bureau of Workers' Disability Compensation. The claim was granted on the ground that Frasier retired while he was disabled and receiving workers' compensation benefits and thus § 373 of the workers' compensation act, relied upon by Model Coverall, was inapplicable. The Workers' Compensation Appellate Commission affirmed that decision. Model Coverall appealed by leave granted.

The Court of Appeals held:

1. Section 373 of the workers' compensation act provides that an employee who terminates active employment and is receiving nondisability pension or retirement benefits that are paid by or on behalf of an employer from whom weekly benefits under the act are sought is presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease. Because Frasier was off work due to his injury at the time he retired and therefore was not actively

REFERENCES

Am Jur 2d, Workmen's Compensation § 364.
See the Index to Annotations under Pension and Retirement; Workers' Compensation.

employed, i.e., actively on the job and performing the customary work of his job, § 373 does not apply.

2. Model Coverall's claim that an employee can render § 373 totally ineffective by retiring first and then filing for workers' compensation benefits is rejected. The sequence of events is not determinative. Rather, the determinative factor is whether the employee was actively employed when he left. Frasier was not, and § 373 does not apply to preclude his entitlement to workers' compensation benefits.

Affirmed.

WORKERS' COMPENSATION — RETIREES — ACTIVE EMPLOYMENT.

An employee who terminates active employment and is receiving nondisability pension or retirement benefits that are paid by or on behalf of an employer from whom weekly benefits under the workers' compensation act are sought is presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease and therefore is not entitled to workers' compensation benefits; "active employment" must be defined as being actively on the job and performing the customary work of one's job, therefore this provision does not apply to an employee who was off work due to a compensable injury at the time he chose to retire (MCL 418.373[1]; MSA 17.237[373][1]).

*Pinsky, Smith, Fayette & Hulswit* (by *Edward M. Smith*), for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), for defendant.

Before: DANHOF, C.J., and MAHER and HOOD, JJ.

PER CURIAM. Defendant Model Coverall Service appeals by leave granted from a June 27, 1988, opinion and order of the Workers' Compensation Appellate Commission affirming a magistrate's award of disability compensation to plaintiff. We affirm.

Plaintiff worked for defendant for approximately 39½ years. In July, 1985, a physician diagnosed a torn rotator cuff in plaintiff's right shoulder. Plaintiff's last day of work with defendant was July 25,

1985. Defendant voluntarily paid workers' compensation benefits to plaintiff. On January 31, 1986, plaintiff retired under an early, reduced nondisability retirement plan available through defendant. The pension administrator coordinated plaintiff's workers' compensation benefits with his retirement benefits as required by § 354 of the Workers' Disability Compensation Act, MCL 418.354; MSA 17.237(354).

On May 23, 1986, defendant stopped plaintiff's compensation benefits, claiming plaintiff's disability did not meet the criteria to overcome the presumption in MCL 418.373; MSA 17.237(373) that there is no loss of wage-earning capacity upon a claimant's receipt of nondisability retirement benefits. On June 4, 1986, plaintiff filed a claim for disability compensation benefits. A magistrate heard the case on stipulated facts. The issue principally in dispute was whether § 373 applied.

The magistrate held that § 373 did not apply because plaintiff retired while he was disabled and receiving workers' compensation benefits and did not retire from active employment.

On appeal, the WCAC affirmed, also concluding that § 373 did not apply to plaintiff because he did not retire from active employment.

The issue on appeal to this Court is whether the magistrate and WCAC properly interpreted § 373, which states:

> An employee who *terminates active employment* and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the social security act, 42 USC 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this act are sought shall be presumed not to have a loss of earnings or earning capacity as the result

of a compensable injury or disease under either this chapter or chapter 4. This presumption may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4. [MCL 418.373(1); MSA 17.237(373)(1) (emphasis added).]

When statutory language is clear and unambiguous, judicial interpretation to vary the plain meaning of the statute is precluded. The Legislature must have intended the meaning it plainly expressed, and the statute must be enforced as written. *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983). The legislative intent behind § 373 was to reform the statute and limit the number of retired workers who were eligible to collect compensation along with a nondisability retirement. *Franks v White Pine Copper Div,* 422 Mich 636, 657; 375 NW2d 715 (1985). Therefore, in determining what the Legislature meant by "active employment" we must define "active" in its ordinary sense and meaning. Placing the "active" before employment must have been for the purpose of adding some further meaning—distinguishing between employees who were actually engaged in performing work for an employer at the time of retirement and those who were not. It follows, therefore, that "active employment" means one who is actively on the job and performing the customary work of his job, as opposed to one who terminates inactive employment. See *Philippi Motor Co v Investors Ins Corp,* 41 Or App 211; 597 P2d 1267 (1979), in which the Oregon appellate court construed the term "actively employed" within a credit life policy.

The magistrate in this case pointed out:

> It must be remembered that the coordination and retiree amendments that went into effect in 1982 were not conceived in a vacuum. There was much concern over perceived abuses of the compensation system by retirees who did not leave the labor force due to inability to work. Although there is little or no recorded Legislative history surrounding the passage of these amendments, the public arguments of the period focused on the "30 and out" retiree who applied for workmens' compensation benefits to augment his retirement pension rather than on the basis of an inability to work. The statutory presumption reflects a collective Legislative doubt that many of the retirees were truly disabled.
>
> In the present case, Plaintiff was off work due to a torn rotator cuff at the time he retired. He did not leave his active employment due to a desire to retire. While he was off receiving workmans compensation benefits the economic realities of his personal financial situation forced him into retirement. The motivation for retiring had nothing to do with a desire to retire. In resolving the issue before me, I construe the phrase "terminate active employment" to mean leaving employment in which the employee was actively engaged up to the point of retirement on a nondisability basis. Plaintiff did not leave work on that basis. The presumption should not apply; benefits have been awarded accordingly.

The WCAC affirmed and added:

> We share the view of the administrative law judge and adopt his interpretation. To his well-stated reasons we add that Section 418.373 triggers the "retiree presumption" only in cases where the employment being terminated is *active*. Section 418.301(11) of the Act assures work-injured employees of continuing employee status through-

out the period during which their disability prevents them from active performance of the duties of their employment. Parts of a statute bearing on the same subject must be construed together, *People v Warner,* 401 Mich 186; 258 NW2d 385 (1977). Were we to adopt defendant's asserted interpretation, the adjective "active" as applied to "employment" in Section 418.373 of the Act would be rendered surplusage. Every word of a statute should be given meaning, and no word should be treated as surplusage or rendered nugatory. *Baker v General Motors Corporation,* 409 Mich 639 [297 NW2d 387] (1980). See also *Richards v General Motors Corporation,* 1987 WCABO 121, 125 (Gonzales, concurring).

We feel the WCAC decision properly states the legislative intent. In this case, it was not disputed that plaintiff was not working for five months prior to taking a reduced, nondisability retirement. Based on the facts of this case, we find that the WCAC did not err in its findings that § 373 did not apply. See *Flynn v General Motors Corp,* 162 Mich App 511, 514; 413 NW2d 444 (1987).

We disagree with defendant's claim that an employee can render § 373 totally ineffective by retiring first and then filing for workers' compensation benefits. The sequence of events is not determinative. The Legislature intended § 373 to apply only to those employees who "terminate active employment." Thus, the question is not whether an employee files his workers' compensation claim before or after he retires, but whether the employee was actively employed when he left.

Affirmed.