The BENEVOLENT AND PROTECTIVE
ORDER OF ELKS OF the UNITED
STATES of America, Plaintiff,

v.

Nanette REYNOLDS, Defendant.

No. 1:93–CV–407.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 23, 1994.

James M. Cameron, Jr., Richard J. Landau, Dykema, Gossett, Spencer, Goodnow & Trigg, Ann Arbor, MI, for plaintiff.

Robert L. Willis, Asst. Atty. Gen., Ron D. Robinson, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Civil Rights & Civil Liberties Div., Detroit, MI, for defendants.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

Plaintiff, The Benevolent and Protective Order of Elks of the United States of America ("the BPO Elks"), brings this action to challenge the constitutionality of Michigan's Elliott-Larsen Civil Rights Act ("MELCRA"), 1976 Mich.Pub.Act 453 as amended by Public Act 70 of 1992 ("Act 70") ("MELCRA as amended"), Mich.Comp.Laws Ann. §§ 37.2101 et seq. (West 1993 Supplement). Pending before the Court is defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff is a tax-exempt fraternal organization whose members are chartered lodges throughout the United States. Plaintiff brings this action on behalf of itself, its 73 Michigan lodges, and the approximately 50,-000 members of those lodges. The plaintiff's governing statutes provide that an applicant for membership must be a male citizen of the United States who is not less than 21 years of age, believes in God, of good character, not affiliated with the Communist Party, and does not advocate the forceful overthrow of the government. Defendant Nanette Reynolds is the director of Michigan's Department of Civil Rights ("MDCR").

Plaintiff essentially contends that MELCRA as amended by Act 70 violates its rights to intimate and expressive association under the First and Fourteenth Amendments to the United States Constitution by prohibiting its gender-based membership requirements and precluding its use of the private club exemption.

Plaintiff pleads three counts. In Count I, plaintiff seeks a declaratory judgment that MELCRA as amended and as applied to its members violates the rights of its members to voluntarily and exclusively associate to advance their fraternal purposes and that its members are entitled to protection from state interference with their freedom of intimate and expressive association. In Count II, plaintiff seeks a declaratory judgment that MELCRA as amended is facially unconstitutional because it creates an irrebuttable presumption that lodges are places of public accommodation and not entitled to the First Amendment's freedom of association and, thereby, precludes the constitutionally required case-by-case analysis of an organization's objective characteristics in determining whether it is a private club. Plaintiff also seeks a declaration that MELCRA as amended is overbroad and will inhibit third

parties from practicing their constitutionally protected rights of association. In Count III, plaintiff alleges that the MDCR unreasonably and unconstitutionally interfered with its members' freedom to intimate and expressive association in violation of Title 42 United States Code Section 1983 by threatening to enforce MELCRA and thereby encourage other parties, believing themselves to be aggrieved by plaintiff's policies, to file suit.

Defendant moves for summary judgment and asserts that MELCRA as amended and properly interpreted does not infringe upon plaintiff's associational rights because it continues to recognize the right of private club members to intimate and expressive association, preserves the private club exemption, and as amended only addresses equal access to facilities of private clubs and not membership. Defendant also contends that the state has a compelling interest in eliminating discrimination in access to places of public accommodation and public service and that this interest justifies the minimal impact that Act 70 may have on plaintiff's associational rights. Finally, defendant argues that Act 70 is not unconstitutionally overbroad.

## II. THE STATUTE

■ Article 3 of MELCRA defines civil rights and prohibits discriminatory practices in the area of public accommodation based on religion, race, color, national origin, age, sex, or marital status. Prior to Act 70, MELCRA did not apply to private clubs that were "not in fact open to the public." MELCRA, Section 303. Some private clubs adopted rules restricting the times when spouses, typically wives, and children of members could use certain club facilities, generally the golf course. The Michigan Legislature adopted Act 70 to eliminate certain of these exclusionary and restrictive practices of private clubs.

Section 301(a) as amended by Act 70 defines the term, a "place of public accommodation," as "a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." The term also includes the *facilities* of a country club, a golf club, a yacht club, an athletic club, a sports club, or a dining club in the definition of a "place of public accommodation."

The original and unamended Section 302 of MELCRA applies to "places of public accommodation" and "public service" that are *not* private clubs. Section 302 prohibits a person from denying anyone the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status."

Section 302a, which was added to MELCRA by Act 70, explicitly applies to private clubs that are defined as places of public accommodation as newly defined in Section 301(a) of MELCRA. Section 302a(2) requires equal access to club facilities for all adults entitled to use club facilities under a membership. Section 302a(2) also requires that a membership which permits use of club facilities during restricted periods must permit all adults using the membership such use. Section 302a(3) requires equal access for all adult members in all membership categories at all times to a club's food and beverage facilities or services.

Act 70 also added two other provisions to MELCRA to which plaintiff objects. First, Section 302a(2) provides: "All classes of membership shall be available without regard to race, color, gender, religion, marital status, or national origin." Plaintiff contends that it now may not exclude women as members because of their gender and that this violates its constitutional rights of intimate and expressive association based on its historic fraternal purpose, practice, and character. Second, the last sentence of Section 301(a) now provides: "This section shall not apply to a private club that is otherwise defined as a place of public accommodation in this article." Plaintiff argues that Section 303 precludes it from using the private club exemption, because it is a dining club defined as a "place of public accommodation" under Section 301(a). Plaintiff argues that this violates the constitutionally required case-by-

case adjudication of private club status as recognized by the Supreme Court and its constitutional rights of association.

## III. ANALYSIS

### A.

■ Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In ruling on a motion for summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

### B.

■ Courts reasonably interpret statutes to effectuate the intent of legislatures. *People v. Hawkins*, 181 Mich.App. 393, 448 N.W.2d 858 (1989); *Department of Social Services v. Brewer*, 180 Mich.App. 82, 446 N.W.2d 593 (1989). Courts examine the plain and specific language of a statute to determine legislative intent. *Lorencz v. Ford Motor Co.*, 439 Mich. 370, 376, 483 N.W.2d 844 (1992); *Hawkins*, 181 Mich.App. at 396, 448 N.W.2d 858; *Frasier v. Model Coverall Service, Inc.*, 182 Mich.App. 741, 744, 453 N.W.2d 301 (1990). However, if a literal and plain reading of a statute would be absurd or clearly inconsistent with the purpose of the statute, a court should depart from a literal construction. *Reisman v. Regents of Wayne State University*, 188 Mich. App. 526, 536, 470 N.W.2d 678 (1991); *Oberlin v. Wolverine Gas & Oil Co.*, 181 Mich. App. 506, 511, 450 N.W.2d 68 (1989). Court must apply terms as expressly defined in a statute. *Harder v. Harder*, 176 Mich.App. 589, 591, 440 N.W.2d 53 (1989). Terms that are not so defined must be given their plain and ordinary meaning. Mich.Comp.Laws § 8.3; *People v. Tracy*, 186 Mich.App. 171, 176, 463 N.W.2d 457 (1990). Courts presume that every word has some meaning which they should effect, avoiding constructions that render any part of a statute surplusage. Judicial construction is proper where reasonable minds can differ on the meaning. *Melia v. Appeal Board of Michigan Employment Sec. Comm*, 346 Mich. 544, 562, 78 N.W.2d 273 (1956); *Brewer*, 180 Mich.App. at 84, 446 N.W.2d 593; *In re Estate of Harris*, 151 Mich.App. 780, 391 N.W.2d 487 (1986). Courts should read statutes in context and reconcile apparent inconsistencies. *People v. Downey*, 183 Mich.App. 405, 409, 454 N.W.2d 235, *appeal denied*, 436 Mich. 871 (1990); *Attorney Gen. v. Ankersen*, 148 Mich.App. 524, 385 N.W.2d 658 (1986). Statutes are presumed to be constitutional and are so construed, unless their unconstitutionality is manifestly clear. *People v. Hayes*, 421 Mich. 271, 364 N.W.2d 635 (1984).

### C.

■ The Court interprets the plain language of Article 3 of MELCRA as amended by Act 70 and determines that it is not unconstitutional as challenged by plaintiffs.

### 1.

■ Although Article 3 includes the facilities of the specified private clubs in the definition of a "place of public accommodation," it also plainly distinguishes between the two. A "place of public accommodation" is a "business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." A "place of public accommodation," however, also includes the *facilities* of a country club, golf club, boating or yachting club, sports or athletic club, and a dining club (with an exception for religious dining clubs, which is not relevant here). Thus, there are effectively two types of public accommodation.

In Sections 302 and 302a, Article 3 provides a distinct prohibitory provision for each

type of public accommodation. Section 302, by its plain terms, applies generally to places of public accommodation, as defined, and prohibits a person from denying an individual the "full and equal enjoyment" of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

Section 302a, by its plain terms, only applies to "a private club that is defined as a place of public accommodation pursuant to section 301(a)." The definition of a "place of public accommodation" in Section 301(a) includes only the *facilities* of the specified private clubs. Generally, Section 302a affirmatively requires such private clubs to provide equal access to facilities for all adult people who are permitted to use club facilities on the basis of a membership. Specifically, Section 302a(2) requires equal availability of access to club facilities for all adults entitled to use club facilities under a membership. Section 302a(2) also requires that a membership which permits use of club facilities during restricted periods must apply to all adults using the membership. Section 302a(3) requires equal access for all adult members in all membership categories at all times to a club's food and beverage facilities or services. These requirements are simple and straightforward and plaintiff does not appear to object to them.

However, plaintiff does object to the requirement in Section 302a(2) that: "All classes of membership shall be available without regard to race, color, gender, religion, marital status, or national origin." Plaintiff argues that this provision requires it to admit women as members. Based on a plain reading of the provision, this Court disagrees.

By its terms, the provision does not make "membership" available without regard to the protected characteristics—it makes "all classes of membership" available. This requirement plainly applies to individuals who are already members of a selected private club. The context supports this reading. The sentences preceding and following the challenged requirement both specifically require equal access to facilities based on existing membership. Similarly, the disputed requirement deals with the availability of "classes of membership" for individuals based on their existing memberships. Thus, this Court finds that the text of Section 302a does not require it to admit women, or any other individuals, for that matter, as new members without regard to their "race, color, gender, religion, marital status, or national origin." [1]

2.

Plaintiff contends that Section 303 unconstitutionally impinges upon its constitutionally protected rights of associational freedom by regulating its membership policies and precludes an individual determination under the private club exemption to determine whether its associational policies and practices are constitutionally protected.[2]

---

**1.** The Court notes that this plain contextual reading of the requirement is also the interpretation advanced by defendant, who is charged by the State to enforce it. Consistently, defendant also stated on the record that it does not process denial of membership complaints under Section 302a(2); rather, it processes such complaints under Section 302. The Court recognizes that third parties might not be bound by what plaintiff has characterized as defendant's "litigation position." However, as determined by this Court, regardless of defendant's position, Section 302a(2), itself, plainly does not make "membership" available to such third parties without regard to their "race, color, gender, religion, marital status, or national origin."

**2.** The Supreme Court has recognized that to secure individual liberty it must protect certain kinds of highly personal relationships from unjustified interference from the state. *Roberts v.*

*U.S. Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Plaintiff notes that *Cornelius v. Benevolent Protective Order of Elks,* 382 F.Supp. 1182 (D.Conn.1974), recognized the constitutional dimension of the BPO Elks' associational rights.

Plaintiff argues that subsequent case law has developed an analysis to evaluate whether an organization is entitled to constitutional protection of their associational rights and that BPO Elks generally reflects them. *Roberts v. United States Jaycees,* 468 U.S. at 623, 104 S.Ct. at 3252–53; *Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); *Rogers v. International Asso. of Lions Clubs,* 636 F.Supp. 1476 (E.D.Mich.1986); *Louisiana Debating and Literary Ass'n v. City of New Orleans,* 1994 WL 86689 No. 93–658 (E.D.La. March 10, 1994). The anal-

Based upon a plain reading of Article 3, this Court determines that Section 303 is not unconstitutional as challenged.

The first sentence of Section 303 plainly exempts private clubs and establishments not in fact open to the public from the requirement of Article 3. It provides: "This article shall not apply to a private club, or other establishment not in fact open to the public,...." However, the exemption is not without exception. Even for such private clubs, their "goods, services, facilities, privileges, advantages, or accommodations" remain subject to Article 3 insofar as they are "available to the customers or patrons of another establishment that is a place of public accommodation."

Similarly the last sentence of Section 303 simply indicates that the facilities of the specified clubs remain subject to Article 3. It provides: "This section shall not apply to a private club that is otherwise defined as a place of public accommodation in this article." Recognizing the technical definition of a "place of public accommodation," the term "private club" in the last sentence of Section 303 must be read as the "facilities of a private club." Thus, the last sentence of Section 303 clarifies that the "facilities" of the specified private clubs which are defined as "places of public accommodation" in Section 301(a) remain subject to the requirements of Section 302a.

Consistency requires this interpretation. Without the addition of the last sentence by Act 70 to Section 303, the private club exemption would conflict with Section 302a, which by its term specifically applies to the facilities of a "private club that is defined as a place of public accommodation pursuant to section 301(a)."

This interpretation also obviates plaintiff's present constitutional challenge. Sections 301(a) and 303 do not in any way indicate that private clubs, whose facilities are statutorily defined as places of public accommodation, *apart from their facilities*, do not remain private clubs and are not entitled to the benefit of the private club exemption in Section 303. As interpreted, the part of Section 301(a) dealing with the facilities of specified private clubs defined as places of public accommodation, Section 302a, and the last sentence of Section 303, simply do not reach membership issues and, therefore, do not implicate constitutional issues of intimate and expressive association.

In summary, this Court determines that no genuine issue of material fact exists and that, based upon a plain reading, Article 3 does not unconstitutionally impinge upon the plaintiff's membership policies and practices or deny plaintiff any opportunity for an individual "case-by-case" determination of whether its and its members rights of intimate and expressive association are constitutionally protected.

ysis considers an organization's characteristics, such as: (1) a historical and purely social, nonbusiness purpose; (2) a nexus of common social interest and congeniality; (3) a selective and exclusive membership; (4) seclusion of club facilities and activities from the public; (5) restrictive guest policies; (6) control of the club by its members; (7) small size and scope; (8) nonprofit organizational status.

Plaintiff asserts the following: It has a long-standing purely social, nonbusiness purpose with members who exhibit a common social interest and enduring friendships. Moreover, it does not advertise for members or reward members for recruiting new members and exercises selectivity and exclusivity in proposing and maintaining membership. It also strictly regulates access to lodge facilities and prohibits nonmember participation in lodge rituals. It is a nonprofit organization and governed by its own membership. Although plaintiff admits that it is relatively large, it argues that its size is not dispositive. It notes that in *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1276 (7th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993), the court recognized the constitutional associational freedoms of the Boy Scouts with over 5 million members.