CAMPBELL v GENERAL MOTORS CORPORATION

Docket No. 256868. Submitted October 4, 2005, at Detroit. Decided October 20, 2005, at 9:05 a.m. Leave to appeal sought.

Earnest E. Campbell filed an application against his employer, General Motors Corporation, seeking workers' compensation benefits after he took nondisability retirement. Before his retirement, Campbell had been placed in General Motors' "jobs bank" when his plant closed. Campbell was obligated to accept a job if one became available, but none did before he retired. While in the jobs bank, Campbell reported to a specific location to await placement and received full pay and benefits, but did not perform any work. The magistrate awarded disability benefits, concluding that the presumption found in MCL 418.373 regarding retirees did not apply. The Workers' Compensation Appellate Commission (WCAC) affirmed. General Motors appealed by leave granted.

The Court of Appeals held:

The WCAC erred by failing to apply the presumption from MCL 418.373(1) in determining whether Campbell was entitled to benefits. Under the statute, an employee who terminates active employment and is receiving nondisability retirement benefits is presumed not to have a loss of earnings or earning capacity as the result of an injury. Campbell continued working without restrictions until assigned to the jobs bank. There is no basis for treating his nondisability retirement any differently than if he had retired without being assigned to the jobs bank. Campbell remained an active employee, although the nature of his work changed.

Reversed and remanded for application of the presumption.

WORKERS' COMPENSATION — RETIREES — PRESUMPTION AGAINST BENEFITS.

An employee who takes a nondisability retirement while assigned to a "jobs bank" with full pay and benefits, pursuant to which assignment the employee did not perform work but was required to accept a job if one became available, was an active employee before retirement and is presumed not to have lost earnings or earning capacity as a result of an injury or disease that is compensable with workers' compensation (MCL 418.373[1]).

*Vigiletti, Chowing, Edgar & Wagner, P.C.* (by *Thomas A. Plagens*), and *Daryl Royal* for Earnest E. Campbell.

*Braun Kendrick Finkbeiner P.L.C.* (by *Scott C. Strattard*) for General Motors Corporation.

Before: TALBOT, P.J., and WHITE and WILDER, JJ.

PER CURIAM. Defendant appeals by leave granted the order affirming the magistrate's open award of disability benefits. We reverse and remand. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

Plaintiff started working for defendant in 1964, and began to experience shoulder pain in 1995. He received some treatment at the plant clinic, but he continued working without restrictions until his plant closed on October 4, 1999. Rather than being laid off, plaintiff was placed in defendant's "jobs bank," which was created pursuant to a union demand during contract negotiations to avoid layoffs. While in the jobs bank, plaintiff was required to report to a specific location to await placement in an available job involving manual labor. Plaintiff received full pay and benefits during this time, although he did not perform any work and the employees in the jobs bank played cards or watched television. If a job became available, plaintiff was obligated to accept it. However, plaintiff was not placed in a job through the jobs bank before he took regular nondisability retirement on August 1, 2000.

Shortly thereafter, plaintiff filed an application for a hearing, seeking workers' compensation benefits because of shoulder and knee injuries. The magistrate found the presumption set forth in MCL 418.373 (§ 373) inapplicable, and awarded benefits on the basis of the conclusion that plaintiff has a limitation of his wage-

earning capacity in work suitable to his qualifications and training resulting from a job-related personal injury. Relying on its earlier decision in *Wisniewski v Gen Motors Corp*, 2003 Mich ACO 53, the Workers' Compensation Appellate Commission (WCAC) affirmed the magistrate's decision. We granted leave to appeal.

On appeal, our review of a decision of the WCAC is limited to questions of law. If there is any evidence supporting the findings of fact made or adopted by the WCAC, and the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, the courts must treat the WCAC's factual findings as conclusive. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709-710; 614 NW2d 607 (2000). A decision is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework. *Wolf v Gen Motors Corp*, 262 Mich App 1, 4; 683 NW2d 714 (2004).

MCL 418.373(1) states:

> An employee who terminates active employment and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the social security act, 42 USC 301 to 1379f, that was paid by or on behalf of an employer from whom weekly benefits under this act are sought shall be presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease under either this chapter or chapter 4. This presumption may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4.

In *Frasier v Model Coverall Service, Inc,* 182 Mich App 741; 453 NW2d 301 (1990), the Court determined that § 373 was inapplicable when the claimant was not working and was collecting workers' compensation benefits at the time of his nondisability retirement. The Court explained:

> The legislative intent behind § 373 was to reform the statute and limit the number of retired workers who were eligible to collect compensation along with a nondisability retirement. Therefore, in determining what the Legislature meant by "active employment" we must define "active" in its ordinary sense and meaning. Placing the "active" before employment must have been for the purpose of adding some further meaning—distinguishing between employees who were actually engaged in performing work for an employer at the time of retirement and those who were not. It follows, therefore, that "active employment" means one who is actively on the job and performing the customary work of his job, as opposed to one who terminates inactive employment. [*Frasier, supra* at 744 (citations omitted).]

The Court in *Frasier* also quoted the magistrate, who construed the phrase "terminate[] active employment" to mean leaving employment in which the employee was actively engaged up to the point of retirement on a nondisability basis. *Id.* at 745. The Court continued:

> The WCAC affirmed and added:
>
> "We share the view of the administrative law judge and adopt his interpretation. To his well-stated reasons we add that Section 418.373 triggers the "retiree presumption" only in cases where the employment being terminated is *active.* Section 418.301(11) of the Act assures work-injured employees of continuing employee status throughout the period during which their disability prevents them from active performance of the duties of their employment. Parts of a statute bearing on the same subject must be construed together, *People v Warner,* 401 Mich 186; 258 NW2d 385 (1977). Were we to adopt defendant's asserted

interpretation, the adjective "active" as applied to "employment" in Section 418.373 of the Act would be rendered surplusage. Every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory. *Baker v General Motors Corporation*, 409 Mich 639 [297 NW2d 387] (1980). See also *Richards v General Motors Corporation*, 1987 WCABO 121, 125 (Gonzales, concurring)."

We feel the WCAC decision properly states the legislative intent. In this case, it was not disputed that plaintiff was not working for five months prior to taking a reduced, nondisability retirement. Based on the facts of this case, we find that the WCAC did not err in its findings that § 373 did not apply. See *Flynn v General Motors Corp*, 162 Mich App 511, 514; 413 NW2d 444 (1987). [*Id.* at 745-746.]

In *Mason v Chrysler Corp*, 201 Mich App 17; 506 NW2d 240 (1993), mod 444 Mich 875 (1993), the plaintiff, at the time he applied for a nondisability pension, was on medical leave for a condition not related to work, although he had suffered a work-related injury before the medical leave and had returned to work with restrictions. The Court in *Mason* distinguished *Frasier*:

> Plaintiff testified that he was on medical leave because of his diabetes. Plaintiff admitted that his diabetes was not work-related. Plaintiff did not apply for a nondisability pension only after being away from work for an extended period of time and while receiving workers' compensation benefits. Therefore, this case is distinguishable from *Frasier v Model Coverall Service, Inc*, 182 Mich App 741; 453 NW2d 301 (1990), and *Dezwaan v Holland Motor Express*, 189 Mich App 575; 473 NW2d 788 (1991).[1] [*Mason, supra* at 21.]

The Court in *Mason* held that the retiree presumption of § 373 was applicable.

---

[1] *Dezwaan* also involved a plaintiff who was not working and was receiving workers' compensation benefits at the time of his nondisability retirement.

This Court also found *Frasier* and *Dezwaan* distinguishable in *McDonald v Holland Motor Express, Inc*, 201 Mich App 285, 289 n 1; 506 NW2d 234 (1993), and *Miles v Russell Mem Hosp*, 202 Mich App 6, 9-11; 507 NW2d 784 (1993). In *Miles*, the claimant had suffered a work-related injury and was performing favored work as a clerk at the time of his nondisability retirement. In *McDonald*, the claimant had continued working after his injury, and later accepted a nondisability pension on the advice of his physician because of the earlier work-related injury. In each case, the Court determined that § 373 was applicable because the claimant was engaging in active employment at the time of his retirement. In *Miles*, the Court reasoned:

> For purposes of § 373, this Court has twice construed "active employment" to mean being "actively on the job and performing the customary work of [the] job." *Frasier v Model Coverall Service, Inc,* 182 Mich App 741; 453 NW2d 301 (1990); *Dezwaan v Holland Motor Express*, 189 Mich App 575, 579; 473 NW2d 788 (1991).
>
> The commission has misconstrued what this Court intended when it spoke of "performing the customary work of [the] job." Plaintiff's job, as of the date of retirement, was clerical. Immediately before his retirement, plaintiff was performing the customary duties of his clerical employment. To construe the phrase as the commission has done in this case makes the retiree presumption entirely meaningless, because all workers with otherwise work-related, compensable disabilities are, by definition, incapable of performing the particular job they were doing at the time of injury, by virtue of the definition of "disability" in § 301(4), MCL 418.301(4); MSA 17.237(301)(4). [*Miles, supra* at 9-10.]

In the instant case, plaintiff continued working without restrictions until he was assigned to the jobs bank as a result of union-management negotiations and the plant closure. He was so assigned until his nondisability

retirement. There is no basis for treating plaintiff's nondisability retirement any differently than if he had retired without being assigned to the jobs bank. Plaintiff remained an active employee, although the nature of his work changed. The WCAC erred by failing to apply the § 373 presumption in determining whether plaintiff was entitled to benefits.

Reversed and remanded for application of the § 373 presumption. We do not retain jurisdiction.