William B. BOWIE,

v.

DELTA AIRLINES, INC.

and

Hanover Insurance Company.

Supreme Judicial Court of Maine.

Argued June 7, 1995.

Decided July 18, 1995.

---

Peter B. Bickerman (orally), Lipman & Katz, P.A., Augusta, for employee.

Jane E. Skelton (orally), Rudman & Winchell, Bangor, for employer.

John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, for amici curiae Great Northern Paper, Champion Int'l Paper, Eastern Me. Med. Center.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

GLASSMAN, Justice.

The employee, William Bowie, appeals from a decision of the Workers' Compensation Board denying his petition for review based on his failure to rebut the presumption set forth in 39–A M.R.S.A. § 223 (Supp.1994–95). Bowie contends that the presumption does not apply to him because he was receiving benefits at the time of his retirement, he was employed at light duty status and his retirement was involuntary. Bowie also argues that even if section 223 applies, he successfully rebutted the presumption. Because we conclude that the hearing officer correctly relied on the presumption in section 223 to deny Bowie's petition for review, we affirm the decision of the Board.[1]

---

1. In his petition for appellate review, Bowie also raised the issue whether section 223 applies retroactively to injuries that predate January 1, 1993, the effective date of Title 39–A. Our order granting the petition for appellate review expressly excluded the retroactivity issue from consideration on appeal. *Morgan–Leland v. University of Maine,* 632 A.2d 748 (Me.1993).

The record reveals the following undisputed facts: Bowie was employed as a customer service agent for Delta Airlines when he injured his back on January 22, 1992. He left work for approximately nine days and returned to work in a light-duty capacity with a restriction against lifting. Bowie was fifty-two years old at the time of his injury and had worked for Delta in various capacities for approximately 20 years. He accepted early retirement along with several other employees in August 1992. He was paid $147.03 per week in compensation benefits after retirement, which reflected a coordination with his nondisability retirement benefits. 39 M.R.S.A. § 62–B (1989); 39–A M.R.S.A. § 221 (Supp.1994–95). In 1993 Delta unilaterally discontinued workers' compensation benefits pursuant to 39–A M.R.S.A. § 205(9) (Supp.1994–95), contending that, pursuant to section 223, Bowie is presumed to have no loss of earning capacity. 39–A M.R.S.A. § 223. Bowie filed a petition for review to challenge the unilateral suspension. A temporary hearing officer of the Board denied the petition on December 2, 1993, ruling that because Bowie had retired from active employment and is receiving nondisability retirement benefits, he is subject to the section 223 presumption. The hearing officer also ruled that because "Bowie has a work capacity and ... has not performed a work search," he failed to meet his statutory burden to rebut the presumption. Bowie's motion for findings of facts was dismissed for failure to file proposed findings. Me. W.C.B.Rule 12.5 (1993). We granted Bowie's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994–95).

The presumption at issue appears in section 223 of Title 39–A and provides:

**§ 223. Presumption of earnings loss for retirees**

**1. Presumption.** An employee who terminates *active employment* and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the United States Social Security Act, 42 United States Code Sections 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this Act *are sought* is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act. This presumption may be rebutted only by a preponderance of evidence that the employee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards to determine disability under this Act.

**2. Construction.** This section may not be construed as a bar to an employee receiving medical benefits under section 206 upon the establishment of a causal relationship between the employee's work and the need for medical treatment.

39–A M.R.S.A. § 223 (emphasis added).

Bowie first contends that the presumption was intended to apply to employees who file for compensation benefits following the employee's retirement. He relies, in part, on the statute's plain language which limits the presumption to retirees receiving nondisability retirement benefits "paid by or on behalf of an employer from whom weekly benefits under this Act *are sought.*" § 223 (emphasis added). He argues that because he was receiving benefits prior to his retirement and his petition for review was filed in response to the employer's suspension of his benefits, he has not "sought" benefits for purposes of section 223. We disagree. We find nothing in the legislative history of section 223 to suggest an intent to limit the presumption to employees who first retire and then seek compensation benefits. The statement of fact accompanying section 223 contains little discussion of its legislative purpose other than to state that it is derived from virtually identical language contained in Michigan's workers' compensation law. L.D. 2464, Statement of Fact (116th Legis.1992). *See* Mich.Comp.Laws Ann. § 418.373 (West 1994). As the Michigan courts have held, the purpose of the presumption was "to remedy—at the behest of employers—perceived abuses by retirees who sought to supplement their pensions with wage-loss benefits." *Brown v. Beckwith Evans Co.*, 192 Mich.App.

158, 480 N.W.2d 311, 314 (1991). As one court noted,

> [t]he history behind enactment of [the retiree presumption] relates that there was a concern that a disproportionate amount of the total workers' disability compensation paid out by some of the major employers of this state went to employees collecting nondisability retirement benefits. The presumption ... reflects the legislative intent to limit the ability of retirees collecting nondisability pensions from also collecting workers' compensation. This allows a greater amount of compensation to be paid to younger employees who are unable to collect company retirement benefits and to create a sound economic environment within the state since Michigan is in the unique position of allowing retired employees to collect compensation along with nondisability pensions.

*Peck v. General Motors Corp.*, 164 Mich.App. 580, 417 N.W.2d 547, 554 (1987), *rev'd, in part, on other grounds*, 432 Mich. 892, 438 N.W.2d 80 (1989); *White v. General Motors Corp.*, 431 Mich. 387, 429 N.W.2d 576, 589–591 (1988).

■ We conclude that, like the Michigan statute, the presumption set forth in section 223 was designed, in part, to reduce compensation costs to employers generally.[2] A second legislative goal was to limit the ability of employees to collect wage-loss benefits as a supplement to retirement. As one Legislator commented in the floor debates, "clearly [a retiree] can not expect to be receiving wages after choosing and seeking retirement and retirement benefits. The wage loss [is] based upon an expectation of continued earnings." Legis.Rec. S–43 (3rd Spec.Sess.1992) (statement of Sen. Kany). Consistent with this purpose, the section 223 presumption may not be construed as a bar to medical benefits, because such benefits are not duplicative of nondisability retirement benefits. 39–A M.R.S.A. § 223.

■ Accordingly, we conclude that the purpose of the phrase "from whom weekly benefits under this Act are sought" is designed to identify the source of the retirement benefits, not the time that the employee files for compensation benefits. *McDonald v. Holland Motor Express, Inc.*, 201 Mich.App. 285, 506 N.W.2d 234, 236 (1993). As a matter of common usage, an employee may be said to "seek" benefits whenever that employee seeks to secure benefits or to retain the continued payment of weekly compensation under the Act. If the Legislature had intended the time that an employee files for compensation benefits to be a decisive factor, it could have chosen specific language to do so.

■ Bowie next contends that because he was working in a light-duty capacity at the time of his retirement, he was not "actively employed" for purposes of section 223. We also reject this contention. The phrase "active employment" does not imply that the employee must be working at his or her full work capacity at the time of retirement. The phrase "active employment" is usually understood to mean "one who is actively on the job and performing the customary work of his job." *Miles v. Russell Mem. Hosp.*, 202 Mich.App. 6, 507 N.W.2d 784, 785 (1993); *Dezwaan v. Holland Motor Express*, 189 Mich.App. 575, 473 N.W.2d 788, 790 (1991); *Frasier v. Model Coverall Serv.*, 182 Mich. App. 741, 453 N.W.2d 301, 302–03 (1990). In this case, Bowie missed approximately nine days of work as a result of his injury and returned to full-time employment as a customer service agent with a restriction against lifting. We conclude that Bowie was actively employed for purposes of section 223.

Bowie also contends that the section 223 presumption should not apply to him because his retirement was "involuntary." Section 223 does not distinguish between voluntary and involuntary retirement. *McDonald*, 506

---

**2.** A primary purpose for the enactment of title 39–A was to reduce workers' compensation costs to employers, generally, in order to attract employers to the state. Legis.Rec. S–40–47 (3rd Spec.Sess.1992); Legis.Rec. H–50–52, 76–81, 91–100 (3rd Spec.Sess.1992); Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Report to the Blue Ribbon Commission (August 31, 1992); *see* P.L.1991, ch. 885, Emergency Preamble (adopting recommendations of the Blue Ribbon Commission).

N.W.2d at 236. Here, Bowie's motion for findings of fact was dismissed.[3] Accordingly, we review the hearing officer's decision " 'in accordance with correct legal concepts, [which] support his ultimate decision, and we will inquire whether on the evidence such factual determinations must be held clearly erroneous.' " *Gallant v. Boise Cascade Paper Group*, 427 A.2d 976, 977 (Me.1981) (quoting *Gorrie v. Elliott Jordan & Son*, 408 A.2d 1008, 1011 (Me.1979)). Because the hearing officer may reasonably have concluded from the evidence presented that Bowie's retirement was voluntary, we need not consider Bowie's argument that the section 223 presumption is inapplicable to cases of involuntary retirement.

■ Finally, Bowie contends that even if section 223 applies, it was error for the hearing officer to suggest that he must show evidence of a work search to rebut the presumption. He argues that evidence of his partial physical incapacity coupled with his testimony as to his limited education, experience and training, and his opinion that he cannot work, rebuts the presumption. Section 223 provides that the presumption "may be rebutted only by a preponderance of evidence that the employee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience." 39–A M.R.S.A. § 223. The Michigan courts have interpreted the employee's burden as follows:

> Relevant inquiries under [the retiree presumption] are: What is the retired employee's residual physical capacity after his work-related injury? What skills and knowledge has he acquired through training or experience? Are these skills transferable to other types or occupations? Are there other jobs to which his skills and knowledge can be transferred within his physical capacity to perform? Under this analytical framework, the retired claimant's burden of rebutting the presumption is twofold: (1) he must establish that he has physical restrictions resulting from a work-related injury or disease, and (2) that

these restrictions render him unable to perform work, within or without his field of skill, that is otherwise "suitable to his qualifications." In other words, a retired worker must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired.

*Peck*, 417 N.W.2d at 552–53; *Miles*, 507 N.W.2d at 788; *McDonald*, 506 N.W.2d at 236.

We have frequently stated that "[d]ecisions of the Board interpreting the Workers' Compensation Act are 'entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result.' " *Curtis v. National Sea Prods.*, 657 A.2d 320, 322 (Me.1995) (quoting *Nielsen v. Burnham & Morrill*, 600 A.2d 1111, 1112 (Me.1991); *Larochelle v. Crest Shoe Co.*, 655 A.2d 1245, 1248 (Me.1995); *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994)). We are cognizant that pursuant to former Title 39, a partially incapacitated employee could receive an award of 100 percent incapacity benefits by showing an unsuccessful, good faith work search or other evidence demonstrating a lack of available employment opportunities. *Poitras v. R.E. Glidden Body Shop*, 430 A.2d 1113, 1114 (Me.1981); *Warren v. Vinalhaven Light & Power Co.*, 424 A.2d 711, 714 (Me.1981) (quoting *Ray's Case*, 122 Me. 108, 110, 119 A. 191 (1922)); *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1008 (Me. 1980); *Fecteau v. Rich Vale Constr.*, 349 A.2d 162, 165 (Me.1975). Since the enactment of Title 39–A that precise issue has not been presented to us. The express language of section 223, however, provides that the standard of disability contained in that section "supersedes other applicable standards to determine disability under this Act." Section 223 does not expressly provide that a partially incapacitated employee may rebut

---

3. In this case, Bowie's motion for findings of fact was dismissed pursuant to Board rule 12.5 for failure to submit proposed findings of fact as required by Me.W.C.B.Rule 12.5 (1993). Pursuant to that rule, a dismissal is treated as though no motion was filed.

the presumption through evidence of an unsuccessful work search, nor are we required to resolve that issue in this appeal. Bowie provided no evidence of a work search or other evidence demonstrating an inability to obtain work in the labor market by reason of his partial incapacity.

The hearing officer concluded that "Bowie has a work capacity." Based on the evidence, we cannot say that the hearing officer erred in concluding that Bowie had not rebutted the presumption that he has not suffered a loss of earnings or earning capacity as a result of his compensable injury.

The entry is:

Decision of the Workers' Compensation Board affirmed.

All concurring.