1999 ME 34

Barry PENDEXTER

v.

TILCON OF MAINE, INC.

and

Hartford Insurance Co.

Supreme Judicial Court of Maine.

Argued Feb. 2, 1999.

Decided Feb. 17, 1999.

---

James J. MacAdam, (orally), James G. Fongemie, Wayne W. Whitney, McTeague, Higbee, MacAdam, Case, Watson & Cohen, P.A., Topsham, for employee.

Robert W. Bower, Jr., Norman, Hanson & DeTroy, LLC, Portland, for employer.

Before WATHEN, C.J. and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Barry Pendexter appeals from a decision of the Workers' Compensation Board granting, in part, his petition for restoration. The issue in this appeal is whether the workers' compensation retiree presumption applies to an employee who returns to work after an initial period of retirement. 39–A M.R.S.A. § 223 (Supp.1998). We affirm.

[¶ 2] Pendexter suffered a work-related low back and left leg injury on October 16, 1985, while employed by Tilcon as a road paving foreman and received short-term incapacity benefits until February 1986. His employment at Tilcon involved a seasonal hiatus between December and March, when he would receive $120 a week to "stay at home." During paving season, however, he would work 10 to 14 hours a day for 5½ days a week, or roughly 60 hours a week. Pendexter retired from Tilcon in October 1990 at age 55, a retirement, the hearing officer found, that had been planned for a couple of years. He then began receiving nondisability retirement pension benefits in the amount of $491 a month. Pendexter moved to Florida after his retirement. He remained unemployed for roughly 2 years, except for a short-term return to work for six weeks as a medical courier. In April 1992, he began full-time employment delivering auto parts, earning approximately $240 a week. In April 1993 Pendexter suffered a second work injury to his back and remained out work until August 1993. He received short-term compensation from his Florida employer pursuant to Florida workers' compensation law for the period that he missed work.

[¶ 3] Pendexter returned to work for his Florida employer from August 1993 until May 1995, when he returned to Maine. One month after his return to Maine, Pendexter found part-time, seasonal work as a chamber person at a motel, earning approximately $116 to $155 a week. After his seasonal lay off in October 1995, Pendexter suffered congestive heart failure and has not returned to work. Pendexter does not dispute the Board's finding that the heart attack was an independent intervening cause of his ongoing incapacity and, therefore, on appeal he does not seek continuing incapacity benefits after January 1996.

[¶ 4] While still employed in Florida, Pendexter filed a petition for restoration with the Maine Workers' Compensation Board in August of 1994. The Board concluded that the retiree presumption applies to his initial retirement based on a finding that Pendexter had terminated active employment prior to the receipt of his nondisability pension. The retiree presumption provides:

**§ 223. Presumption of earnings loss for retirees**

   **1. Presumption.** An employee who terminates active employment and is receiving non-disability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the United States Social Security Act, 42 United States Code Sections 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this Act

are sought is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act. This presumption may be rebutted only by a preponderance of evidence that the employee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience.· This standard of disability supersedes other applicable standards to determine disability under this Act.

**2. Construction.** This section may not be construed as a bar to an employee receiving medical benefits under section 206 upon the establishment of a causal relationship between the employee's work and the need for medical treatment.

39–A M.R.S.A. § 223 (Supp.1998).

[¶ 5] The Board concluded that Pendexter could only rebut the retiree presumption for the four-month period in 1993 that he was totally incapacitated as a result of his Florida work injury.[1] With regard to the remaining period of employment before and after the Florida work injury, the Board concluded:

> There is simply insufficient evidence upon which to conclude that he was unable to perform work within or without his field of skill, otherwise suitable to his qualifications. *Bowie v. Delta Airlines[, Inc.]*, 661 A.2d 1128 (Me.1995). Mr. Pendexter actually worked two different jobs in the period during which benefits were sought. He was, in fact, capable of performing those jobs and others.

The Board denied Pendexter's motion for further findings of fact and conclusions of law, and we granted his petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

[¶ 6] Pendexter first contends that the section 223 presumption should not apply to him because his retirement was "involuntary." The employee in *Bowie v. Delta Airlines, Inc.*, 661 A.2d 1128, 1131–32 (Me.1995), made a similar argument. As in *Bowie*, we conclude that it is not necessary for us to determine whether section 223 is inapplicable

in cases of involuntary retirement, because the Board found on competent evidence that Pendexter's retirement was voluntary. The Board found that

> the retirement had been planned for more than a couple of years before it was taken and that Mr. Pendexter enjoyed his retirement for a couple of years before he chose to seek further work. Mr. Pendexter testified that he planned to return to work at some point post retirement 'to bring in some money and no headaches.' By this, I take it that Mr. Pendexter planned to work less and rely on his retirement income to some extent.

[¶ 7] Pendexter contends further that, even if the section 223 presumption was triggered by his initial retirement, the presumption no longer applied after he returned to full-time "active employment ." We disagree.

[¶ 8] Section 223 was based on a virtually identical Michigan law, MICH. COMP. LAWS § 418.373 (1998). *See Bowie*, 661 A.2d at 1130; *see also* L.D. 2464, Statement of Fact (116th Legis.1992). Decisions of this Court and the courts of Michigan have interpreted the term "active employment" to refer to the employment at the time of the employee's original retirement. The test for determining "active employment" in this context hinges on the degree to which the employee's work-injury impairs his or her ability to return to the full-duties of pre-injury employment. *See e.g., Cesare v. Great N. Paper Co., Inc.*, 1997 ME 170, ¶ 5, 697 A.2d 1325, 1327; *Bowie*, 661 A.2d at 1131; *see also Miles v. Russell Memorial Hosp.*, 202 Mich. App. 6, 507 N.W.2d 784, 785 (1993); *Dezwaan v. Holland Motor Express*, 189 Mich. App. 575, 473 N.W.2d 788, 790 (1991); *Frasier v. Model Coverall Serv. Inc.*, 182 Mich. App. 741, 453 N.W.2d 301, 302–03 (1990).

[¶ 9] As Pendexter concedes, and as the Board suggests, some retirees, although they return to work, may deliberately seek underemployment after retirement for the purpose of supplementing their retirement benefits, but with no serious intent to return to full-

---

1. The Board also awarded total incapacity benefits from September 2, 1994 to January 4, 1995 for the employer's failure to file a timely notice of controversy. Tilcon has not appealed from this decision.

time employment. Were we to adopt the employee's interpretation of section 223, we would then have to arrive at a completely different interpretation of the phrase "active employment", applicable only to post-retirement employment, that hinges on the subjective intent of the employee regarding return to the previous full-time active employment. We find no support for such an analysis in either the legislative history or the case law, nor do we ascribe to the Legislature an intent to require fact-finding concerning an employee's subjective, and possibly evolving, intentions to retire and to stay retired. Moreover, the employee's interpretation, if adopted, would, in effect, create a second means of rebutting the retiree presumption when the statute only provides one.

[¶ 10] We do not address the situation of an employee who retired and went immediately to another job. In this case, Pendexter voluntarily terminated active employment and remained out of work for a period of time before seeking re-employment. The retiree presumption was therefore triggered in October 1990 when he initially retired. The Legislature could have rationally concluded that, in the case of an employee who terminates active employment and accepts nondisability retirement benefits, the employee's resulting unemployment or underemployment is most probably no longer "due to the injury," but due to the retirement.

[¶ 11] Finally, Pendexter contends that, even if the retiree presumption applies, the Board erred in concluding that he failed to rebut the presumption for the period of time after he returned to full-time work. Section 223 provides, in pertinent part: "This presumption may be rebutted only by a preponderance of evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience." 39–A M.R.S.A. § 223.

[¶ 12] In *Bowie,* 661 A.2d at 1132, we cited with approval the interpretation of the rebuttal provision adopted by the Michigan Court of Appeals:

Relevant inquiries under [the retiree presumption] are: What is the retired employee's residual physical capacity after his work-related injury? What skills and knowledge has he acquired through training or experience? Are these skills transferable to other types or occupations? Are there other jobs to which his skills and knowledge can be transferred within his physical capacity to perform? Under this analytical framework, the retired claimant's burden of rebutting the presumption is twofold: (1) he must establish that he has physical restrictions resulting from a work-related injury or disease, and (2) that these restrictions render him unable to perform work, within or without his field of skill, that is otherwise "suitable to his qualifications." In other words, a retired worker must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired.

*Bowie,* 661 A.2d at 1132 (quoting *Peck v. General Motors Corp.,* 164 Mich.App. 580, 417 N.W.2d 547, 552–53 (1987), *rev'd, in part, on other grounds, Pankow v. General Motors Corp.,* 432 Mich. 892, 438 N.W.2d 80 (1989)). Thus, in *Peck,* 417 N.W.2d at 552, the Michigan Court of Appeals stated that "'the definition of "suitable work" [means] *any job, within or without [the employee's] field of skill* for which plaintiff is qualified by virtue of his training or experience as a millwright, to which he can transfer, adopt, or utilize those skills and knowledge'" (emphasis in original) (citations omitted).

[¶ 13] The interpretation of the Board is consistent with the statute's plain language. In order to rebut the retiree presumption, Pendexter needed to show an inability to perform any remunerative work. Because Pendexter could only rebut the presumption for that four-month period of time while in Florida that he was totally incapacitated from work, we affirm the decision of the Board.

The entry is:

Decision of the Workers' Compensation Board affirmed.