2003 ME 115

**Rafael COSTALES**

v.

**S.D. WARREN CO. et al.**

Supreme Judicial Court of Maine.

Argued: May 14, 2003.
Decided: Sept. 19, 2003.
Revised: Oct. 15, 2003.
Reconsideration Denied Oct. 15, 2003.

Anna Tesmenitsky, Esq. (orally), James J. MacAdam, Esq., MacAdam Law Offices, Portland, for employee.

Kevin M. Gillis, Esq. (orally), Troubh, Heisler & Piampiano, P.A., Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Rafael Costales appeals from the decision of a hearing officer of the Workers' Compensation Board (*McCurry, HO* ), denying his petition for restoration and applying the "retiree presumption," which presumes that an employee who terminates active employment and receives nondisability retirement benefits has no loss of earnings or loss of earning capacity, and is therefore not entitled to incapacity benefits. 39–A M.R.S.A. § 223 (2001). The hearing officer concluded that the presumption could not be rebutted without persuasive evidence of a total physical incapacity to work, and that evidence of an unsuccessful work search was insufficient. We affirm the decision.

## I. FACTS

[¶ 2] Rafael Costales is a political refugee from Cuba who immigrated to the United States in 1959. He began working full-time for S.D. Warren in 1969 and suffered a right shoulder injury on June 12, 1990, and a subsequent low back injury on October 23, 1994. Costales accepted early retirement from S.D. Warren at the age of sixty-two, effective December 1, 1994. He had refused a similar offer of early retirement the previous year. Costales testified that, at the time of his retirement, there had been numerous layoffs at the mill, and it had been reported that S.D. Warren would change ownership to Sappi Fine Paper. Costales feared that he would be laid off due to his work injuries during the change of ownership.

[¶ 3] Shortly after he retired from S.D. Warren, Costales obtained part-time employment with Agency Rent–a–Car, and then part-time employment in 1996 at Shaw's Supermarkets. He suffered a second work injury while working at Shaw's that kept him out of work from June to August 1997. He left his employment at Shaw's in 1998, at the age of sixty-six, and has remained unemployed since that time.

[¶ 4] In a 2000 decree, the hearing officer had denied Costales's petition for restoration for his 1990 injury and granted his petition for award for the 1994 injury. Pursuant to the retiree presumption,[1] the hearing officer concluded that Costales

1. Section 223 provides:

§ 223. **Presumption of earnings loss for retirees**

**1. Presumption.** An employee who terminates *active employment* and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the United States Social Security Act, 42 United States Code, Sections 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this Act are sought is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act. This presumption may be rebutted only by a preponderance of evidence that the employee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under this Act.

**2. Construction.** This section may not be construed as a bar to an employee receiving medical benefits under section 206 upon the establishment of a causal relationship

had no loss of earnings as a result of his injury and awarded no incapacity benefits. In the decree, the hearing officer made the following findings:

> [Costales's] retirement was involuntary in the sense that he did not then want to retire but was driven to do so by his fear that he would be forced out of the Mill under less favorable circumstances than the enhanced retirement package offered. He knew that his English was heavily accented and he had no work experience to speak of outside of S.D. Warren.
>
> . . . .
>
> . . . Costales obviously did not intend to leave the active work force since he started to look for work soon after he retired. The job Mr. Costales found at Shaw's was the best one he could find because he had virtually no transferable skills, his English is very heavily accented.

The hearing officer concluded that although Costales's retirement was not voluntary and he had work limitations at the time of his retirement, his retirement fell within the section 223 presumption that Costales had not rebutted. Relying on *Pendexter v. Tilcon of Me., Inc.*, 1999 ME 34, ¶ 13, 724 A.2d 618, 621, the hearing officer found that Costales had failed to "show an inability to perform any remunerative work" (quoting *Pendexter*).[2] Although Costales petitioned for appellate review of that decision, the petition was denied.

[¶ 5] Costales filed petitions for restoration in July 2001 and January 2002. In

the decree addressing those petitions, which is the subject of the present appeal, the hearing officer concluded that, although Costales had performed "an extensive work search and for purposes for this proceeding ha[d] established that his medical condition ha[d] gotten a bit worse," he had not rebutted the section 223 presumption because he had not established an inability to perform any work. The hearing officer concluded: "Section 223 on its face 'supersedes other applicable standards used to determine disability under this Act.' The section looks to whether the employee is able . . . to perform work . . . rather than whether he is 'able to earn.' Thus it appears that an unsuccessful work search will not rebut the presumption" (quoting 39–A M.R.S.A. § 223(1)).

[¶ 6] The hearing officer denied Costales's motion for further findings of fact and conclusions of law. We granted the employee's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

■ [¶ 7] The retiree presumption is designed to assist fact-finders in determining when an employee who has reached or neared the conclusion of his or her working career will remain eligible to receive workers' compensation benefits. Because workers' compensation benefits are designed to replace wages that would have been earned but for a work-related injury, they are no longer payable if the employee would not otherwise have been earning wages.[3]

---

between the employee's work and the need for medical treatment.

39–A M.R.S.A. § 223 (2001) (emphasis added).

**2.** The hearing officer also found that "Costales has failed to establish that the continu-

ing effects of his work injury forced him to stop working at Shaw's."

**3.** For example, see *Mathieu v. Bath Iron Works*, 667 A.2d 862, 864 (Me.1995) (compensation unavailable when incapacity due to totally incapacitating intervening nonwork injury) and *Coty v. Town of Millinocket*, 393 A.2d

█ [¶ 8] In establishing the retiree presumption, the Legislature used language that is noticeably different from language used to determine whether an otherwise active employee is eligible for benefits. Specifically, an employee seeking to overcome the retiree presumption must demonstrate that he is "unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience." 39–A M.R.S.A. § 223(1). Thus, the focus is on the employee's *ability to perform work.* Significantly, the Legislature provided that "[t]his standard of disability supersedes other applicable standards used to determine disability under this Act." *Id.*

[¶ 9] In contrast, the more traditional standard for determining work incapacity pursuant to the Maine Workers' Compensation Act hinges on both *inability to work* and *unavailability of employment.* In other words, a determination of incapacity in other contexts often turns on the resolution of two essential issues: (1) the employee's physical ability to perform work; and (2) the availability of work to the employee as a result of an injury.[4]

[¶ 10] That frequently dual nature of an incapacity determination is not present, however, in the language of section 223. Rather, the "presumption may be rebutted only by a preponderance of evidence that the employee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience." 39–A M.R.S.A. § 223. The sole question rests on the employee's ability to "perform work," not on the availability of work that he could perform.

[¶ 11] This conclusion is consistent with our prior opinions relating to the retiree presumption. We have previously examined section 223 rebuttal language in two cases: *Pendexter,* 1999 ME 34, ¶¶ 8–13, 724 A.2d at 620–21, and *Bowie v. Delta Airlines, Inc.,* 661 A.2d 1128, 1130–31 (Me. 1995). In *Bowie,* 661 A.2d at 1131, we held that the presumption could be applied to an employee who was working light-duty at the time of his retirement. We did not address the employee's argument that it was not necessary to perform a work search to rebut the presumption, stating:

> Section 223 does not expressly provide that a partially incapacitated employee may rebut the presumption through evidence of an unsuccessful work search, nor are we required to resolve that issue in this appeal. Bowie provided no evidence of a work search or other evidence demonstrating an inability to obtain work in the labor market by reason of his partial incapacity.

156, 157 (Me.1978) (no compensation when employee's unsuccessful work search was result of general economic downturn and not work injury).

4. For example, the test for partial incapacity is a function of the employee's physical ability to perform work and, in cases of 100% partial incapacity, the unavailability of work in the employee's local labor market. *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me. 1996). Similarly an employee may prove entitlement to total incapacity pursuant to 39–A M.R.S.A. § 212 (2001), by showing (1) "a total physical incapacity to perform any work, either part-time or full-time," *Adams v. Mt. Blue Health Ctr.,* 1999 ME 105, ¶ 4, 735 A.2d 478, 479; or (2) in cases involving employees with a partial physical incapacity who have reached maximum medical improvement, by showing the unavailability of work in the employee's local community, and a physical inability to perform full-time work in the statewide labor market, regardless of the availability of such work, *id.* ¶ 17, 735 A.2d at 483; *see also Lamphier v. Bath Iron Works Corp.,* 2000 ME 121, ¶ 4, 755 A.2d 489, 492.

*Id.* at 1132–33.[5]

[¶ 12] In *Pendexter*, 1999 ME 34, ¶¶ 8–13, 724 A.2d at 620–21, we held that the presumption may be applied to an employee who has retired from work, but has returned to part-time employment after an initial period of retirement. We affirmed the hearing officer's finding that the employee was only able to rebut the retiree presumption during the four-month period that he had been rendered totally incapacitated by a Florida work injury. *Id.* ¶ 13, 724 A.2d at 621. We concluded that "[i]n order to rebut the retiree presumption, [the employee] needed to show *an inability to perform any remunerative work.* Because [the employee] could only rebut the presumption for that four-month period of time while in Florida that he was totally incapacitated from work, we affirm the decision of the Board." *Id.* (emphasis added).

 [¶ 13] Our analysis in *Pendexter* applies equally here. We conclude that the phrase "unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience," means that in order to rebut the retiree presumption, the employee must show a total physical inability to perform any work that would otherwise be suitable to the employee's qualifications, training and experience, regardless of the availability of that work.

[¶ 14] Finally, we find no error in the hearing officer's factual determination that Costales had not demonstrated that a work-related disability rendered him unable to perform work suitable to his qualifications, training and experience.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is affirmed.

5. Discussing the burden of proof required for rebuttal generally, we adopted the interpretation of the Michigan courts:

Relevant inquiries under [the retiree presumption] are: What is the retired employee's residual physical capacity after his work-related injury? What skills and knowledge has he acquired through training or experience? Are these skills transferable to other types or occupations? Are there other jobs to which his skills and knowledge can be transferred within his physical capacity to perform? Under this analytical framework, the retired claimant's burden of rebutting the presumption is twofold: (1) he must establish that he has physical restrictions resulting from a work-related injury or disease, and (2) that these restrictions render him unable to perform work, within or without his field of skill, that is otherwise "suitable to his qualifications." In other words, a retired worker must demonstrate by a preponderance of the evidence that the work-related impairment precludes him from performing any other work, either within or without his field of skill, for which he is qualified by virtue of his prior training or experience and to which he can transfer, adapt or utilize job skills and such knowledge previously acquired.

*Bowie v. Delta Airlines, Inc.*, 661 A.2d 1128, 1132 (Me.1995) (quoting *Peck v. Gen. Motors Corp.*, 164 Mich.App. 580, 417 N.W.2d 547, 552–53 (1987), *rev'd, in part, on other grounds, Pankow v. Gen. Motors Corp.*, 432 Mich. 892, 438 N.W.2d 80 (1989)).