2007 ME 132

**Thelma SAUCIER**

v.

**Nichols PORTLAND et al.**

Supreme Judicial Court of Maine.

Argued: June 20, 2007.
Decided: Sept. 18, 2007.

Anna Priluck (orally), MacAdam Law Offices, P.A., Portland, for employee.

Alison A. Denham (orally), James E. Fortin, Douglas, Denham, Buccina & Ernst, Portland, for employer.

John F. Lambert, Jr., Lambert Coffin, Portland, for amici curiae Maine Chamber of Commerce, Maine Council of Self-Insurers, and Workers' Compensation Coordinating Council.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

MEAD, J.

[¶ 1] Nichols Portland appeals from a decision of a Workers' Compensation Board hearing officer (*Sprague, HO*) granting Thelma Saucier's petition for restoration, and awarding her 800 weeks of benefits pursuant to 39–A M.R.S. § 212(2)(G) (2006) for the permanent and total loss of industrial use of both hands. Nichols contends inter alia that Saucier is not entitled to these benefits because she failed to rebut the statutory presumption that she suffers no earnings incapacity from the work injury because she is retired. *See* 39–A M.R.S. § 223 (2006). We

agree, and vacate the hearing officer's decision.

## I. FACTUAL BACKGROUND

[¶2] Thelma Saucier, who is seventy-nine years old, worked for Nichols Portland from 1988 to 1997, when she retired. Her job involved manual and visual inspection of geroters, which are small component parts of motor vehicles, manufactured by Nichols. Saucier suffered a bilateral carpal tunnel injury with a March 1, 1997, date of injury.[1]

[¶3] In a prior proceeding, Saucier sought incapacity benefits for the carpal tunnel injury. In May 2000, a hearing officer (*Johnson, HO*) determined that although Saucier was entitled to the protection of the Act for that injury, she was not entitled to any additional incapacity benefits because she had failed to rebut the "retiree presumption" of 39–A M.R.S. § 223. The hearing officer invoked the presumption, finding that Saucier had suffered no resultant earnings incapacity because she had voluntarily terminated active employment and was receiving Social Security and non-disability pension benefits. In addition, the hearing officer found that Saucier had not rebutted the presumption because she failed to present evidence that she was unable to perform suitable work on account of the injury.

[¶4] Saucier has not worked or looked for work since her retirement in 1997. Saucier's carpal tunnel symptoms began to worsen. In December 2005, Saucier filed the current petition for restoration of benefits based on her 1997 injury. In response to her petition, Nichols offered Saucier employment that involved only visual inspection of its product and did not require use of her hands. Although her

doctor approved the position, Saucier did not respond to the offer.

[¶5] During these proceedings, Saucier asserted that her medical condition has deteriorated such that she has suffered the permanent and total loss of industrial use of both hands pursuant to section 212(2)(G). The hearing officer (*Sprague, HO*) agreed, and awarded her 800 weeks of permanent total incapacity benefits, "from the date of injury ongoing with appropriate offsets for amounts already paid." The hearing officer specifically found that Saucier's condition had worsened since the 2000 decree; she is unable to get dressed in the morning by herself; her husband has to tie her shoes, zip her boots, and help her get her pants on; she is able to drive approximately fifteen miles each way to see her daughter in Portland once a week; she plays cards with her husband with difficulty; she cannot lift even light objects; and she drops items frequently.

[¶6] Nichols filed a petition for appellate review, which this Court granted pursuant to 39–A M.R.S. § 322(3) (2006). The Maine Chamber of Commerce, the Maine Council of Self–Insurers, and the Workers' Compensation Coordinating Council, acting together, filed an amici curiae brief.

## II. DISCUSSION

[¶7] Nichols contends that the hearing officer erred when awarding benefits to Saucier for the permanent and total loss of industrial use of her hands pursuant to section 212(2)(G). Nichols argues that the alleged loss of industrial use occurred several years after Saucier retired, and that Saucier failed to overcome the presumption in section 223 that she suffers no loss of earnings as a result of her work injury.

---

1. Saucier has alleged other dates of injury, including a 1998 date for an injury to her lower back, which are not at issue in the current proceedings.

## A. Standard of Review

[¶ 8] When construing any provision of the Workers' Compensation Act, we must strive to give effect to the intent of the Legislature. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we first must look to the plain meaning of the statutory language, and construe that language to avoid absurd, illogical, or inconsistent results. *Id.* If the statutory language is ambiguous, we must look beyond the plain meaning and examine other indicia of legislative intent, including legislative history. *Id.* Decisions of the Board interpreting the Workers' Compensation Act are ordinarily "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Id.*

## B. Permanent and Total Loss of Industrial Use

[¶ 9] In addition to total or partial benefits awarded for the loss of earning capacity, the Workers' Compensation Act allows for compensation for the loss of certain body parts. These benefits are known as "schedule" benefits or "specific loss" benefits. For example, an injured employee who suffers the loss of a great toe is entitled to thirty-three weeks of benefits, 39–A M.R.S. § 212(3)(G), while an employee who suffers the loss of an arm is entitled to 269 weeks of benefits, 39–A M.R.S. § 212(3)(J). Except where specified, actual amputation is a prerequisite to award of specific loss benefits pursuant to section 212(3). *Gibbs v. Fraser Paper, Ltd.*, 1997 ME 225, ¶ 7, 703 A.2d 1256, 1258. Accordingly, specific loss benefits are not awarded for the mere loss of use of the body part. *Id.*

[¶ 10] Title 39–A M.R.S. § 212(2) provides for "permanent total incapacity" benefits. These benefits are a type of schedule benefit intended for those who sustain more catastrophic losses, such as the loss of more than one member. The statute provides that in certain cases, "it is conclusively presumed for 800 weeks from the date of injury that the injury resulted in permanent total incapacity and that the employee is unable to perform full-time remunerative work." 39–A M.R.S. § 212(2).[2] Those cases include, among other things, the "permanent and total loss of industrial use of … both hands." *Id.* § 212(2)(G)

[¶ 11] Although the Workers' Compensation Act has provided for schedule benefits in one form or another since the original enactment in 1915, R.S. ch. 295, § 14 (1915), permanent and total loss of

---

**2.** Title 39–A M.R.S. § 212(2) (2006) provides:

**2. Presumption of Total Incapacity.** For the purposes of this Act, in the following cases it is conclusively presumed for 800 weeks from the date of injury that the injury resulted in permanent total incapacity and that the employee is unable to perform full-time remunerative work in the ordinary competitive labor market in the State. Thereafter the question of permanent and total incapacity must be determined in accordance with the facts, as they then exist. The cases are:

**A.** Total and permanent loss of sight of both eyes;

**B.** Actual loss of both legs or both feet at or above the ankle;

**C.** Actual loss of both arms or both hands at or above the wrist;

**D.** Actual loss of any 2 of the members or faculties in paragraph A, B, or C;

**E.** Permanent and complete paralysis of both legs or both arms or one leg and one arm;

**F.** Incurable insanity or imbecility; and

**G.** *Permanent and total loss of industrial use of* both legs or *both hands* or both arms or one leg and one arm.

For the purpose of this subsection such permanency may be determined no later than 30 days before the expiration of 500 weeks from the date of the injury.

(Emphasis added.)

industrial use benefits were not added until 1992. P.L. 1991, ch. 885, § A–8 (effective Jan. 1, 1993) (codified at 39–A M.R.S. § 212 (2006)). The Statement of Fact that accompanied the enactment of 39–A M.R.S. § 212 provides:

> Section 212 provides total incapacity benefits equal to 80% of the employee's after-tax average weekly wage, subject to the maximum benefit, for the duration of the incapacity. In subdivision 2, a conclusive presumption of total incapacity extends for 800 weeks for the specified conditions. Subsection 3 lists the specific loss benefits under which the employee is entitled to receive the listed number of weeks of benefits for the specific amputation, regardless of any actual loss in wages. With the exception of subsection 1, paragraph 2, which is a restatement of Title 39, section 54–B, subsection 2, section 212 is based on Michigan § 418.351 and § 418.361.

L.D. 2464, § 212, Statement of Fact (115th Legis. 1991). The permanent and total loss of industrial use language was based on Michigan's statute. Although we have not had the occasion to address the meaning of the term, the Michigan Supreme Court has described those benefits as:

> a special category of total and permanent disability benefits [that] allows recovery for total and permanent disability where there is no anatomical loss, but where there is a loss of industrial use. Hence, for example, even if an employee does not suffer actual amputation of one or both legs so as to qualify for specific loss benefits, he may nevertheless be entitled to scheduled benefits for injury to both legs if he has lost the "industrial use" of his legs. In this way the "loss of industrial use" category of total and permanent benefits differs from other total and permanent categories.

*Cain v. Waste Mgmt., Inc.*, 465 Mich. 509, 638 N.W.2d 98, 100 (2002). The Michigan Court has held that "scheduled benefits for all specific losses, major or relatively minor, are payable without regard to loss of wage earning capacity, *except for the distinctive and atypical 'industrial use' loss*" category. *Redfern v. Sparks–Withington Co.*, 403 Mich. 63, 268 N.W.2d 28, 35 (1978) (emphasis added). Thus, Michigan's statute, "with its reference to permanent and total loss of industrial use, calls the factfinder to look to wage-earning capacity and the injured worker's ability to function in industry." *Cain v. Waste Mgmt., Inc.*, 472 Mich. 236, 697 N.W.2d 130, 142 (2005).

## C. The Retiree Presumption

[¶ 12] "The retiree presumption is designed to assist fact-finders in determining when an employee who has reached or neared the conclusion of his or her working career will remain eligible to receive workers' compensation benefits." *Costales v. S.D. Warren Co.*, 2003 ME 115, ¶ 7, 832 A.2d 790, 792. It provides that an "employee who terminates active employment and is receiving nondisability pension or retirement benefits … is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act." 39–A M.R.S. § 223.[3] The Legislature did not allow for

---

3. Title 39–A M.R.S. § 223 provides:

   **1. Presumption.** An employee who terminates active employment and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the United States Social Security Act, 42 United States Code, Sections 301 and 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this Act are sought is presumed not to have a loss of earnings or earning capacity as the result of compensable injury or disease under this Act. The presumption may be rebutted only by a preponderance of evidence that the employ-

the recovery of both workers compensation and retiree benefits "[b]ecause workers' compensation benefits are designed to replace wages that would have been earned but for a work-related injury, they are no longer payable if the employee would not otherwise have been earning wages." *Costales*, 2003 ME 115, ¶ 7, 832 A.2d at 792.

[¶ 13] An employee may rebut the retiree presumption by demonstrating by "a preponderance of evidence that [she] is unable, because of a work-related disability, to perform work suitable to [her] qualifications, including training or experience." 39–A M.R.S. § 223. When applying the retiree presumption, the "focus is on the employee's *ability to perform work.*" *Costales*, 2003 ME 115, ¶ 8, 832 A.2d at 793. The employee must show "a total physical inability to perform any work that would otherwise be suitable to the employee's qualifications, training and experience, regardless of the availability of the work." *Id.* ¶ 13, 832 A.2d at 794. "This standard of disability supersedes other applicable standards used to determine disability under this Act." 39–A M.R.S. § 223.

## D.   The Hearing Officer's Decision

[¶ 14] The hearing officer determined that Saucier suffered the permanent and total loss of industrial use of both hands, which he interpreted as meaning the "loss of the primary service" or "loss of entire usefulness" of the hands. He also concluded that the retiree presumption did not bar the receipt of benefits pursuant to section 212(2)(G). The hearing officer reasoned that once the standard for loss of industrial use is met, a conclusive presumption arises pursuant to section 212(2) that the employee is entitled to total benefits for an 800–week period from the date of injury. He determined that permanent and total loss of industrial use benefits are not predicated on the employee's inability to earn wages, because section 212(2) benefits compensate for human factors in addition to wage loss, pursuant to 39–A M.R.S. § 221(1) (2006).[4] Thus, it was irrelevant to the hearing officer's decision that Saucier had retired or that work was available to her that she could perform.

## E.   Analysis

[¶ 15] The plain language of the standard of disability set forth in section 223 demonstrates that the Legislature intended that it "supersede[ ] other applicable standards used to determine disability under this Act." 39–A M.R.S. § 223. Accordingly, we conclude that the hearing officer erred by awarding benefits pursuant to section 212(2)(G) without applying the superseding retiree presumption of section 223. If it is established that the employee has terminated active employment and is receiving non-disability pension or retirement benefits, that employee must rebut the retiree presumption in order to receive permanent and total loss of industrial use benefits. The employee

---

ee is unable, because of a work-related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under this Act.

   **2.   Construction.** This section may not be construed as a bar to an employee receiving medical benefits under section 206 upon the establishment of a causal relation-

ship between the employee's work and the need for medical treatment.

**4.**   Title 39–A M.R.S. § 221(1) (2006) provides that benefits received pursuant to 39–A M.R.S. § 212(2), (3) need not be coordinated with other, non-workers' compensation wage replacement benefits because "benefits under section 212, subsections 2 and 3 are benefits that recognize human factors substantially in addition to the wage loss concept[.]"

must present evidence of a total physical inability to perform any work that would otherwise be suitable to her qualifications, training and experience, regardless of the availability of the work.

[¶ 16] We reject the hearing officer's conclusion that a retired employee need not rebut the retiree presumption in order to receive benefits under section 212(2)(G) because those benefits are designed to compensate for human factors other than lost earnings capacity. The term "industrial" plainly connotes use in the workplace. Thus, by the use of that term, the Legislature retained the wage loss concept in section 212(2)(G) when adding benefits for the "distinct and atypical" loss of industrial use category of scheduled benefits.

[¶ 17] In order to rebut the retiree presumption, Saucier would have to demonstrate that she was not capable of performing any suitable work as a result of her carpal tunnel injury. The record reflects that the employer offered an employment position involving visual inspection of the geroters—a position that was suitable to her qualifications, training, and experience and would not involve the re-

petitive use of her hands. In the absence of evidence that she would be physically unable to perform this work, she is unable to rebut the retiree presumption.

[¶ 18] Accordingly, we conclude that the hearing officer erred in awarding Saucier benefits for the permanent and total loss of industrial use of her hands without first applying the retiree presumption. We need not remand for additional proceedings, however, because the record establishes that there was suitable work that Saucier was able to perform, and that she did not establish a loss of industrial use of her hands.[5]

The entry is:

The decision of the Workers' Compensation Board hearing officer is vacated, and the case remanded for entry of judgment in favor of the employer.

---

**5.** Nichols also contends that the issue whether the retiree presumption applies was decided in the 2000 decree; therefore Saucier should have been barred from reopening that issue in the current proceedings. Nichols further contends that permanent and total loss of industrial use benefits are unavailable to Saucier because she refused an offer of reason-able employment pursuant to 39–A M.R.S. § 214(1)(A) (2006), and that Saucier is not entitled to interest on the award. We find that Saucier was not barred from reopening the issue of compensation for the carpal tunnel injury, and, because the retirement presumption issue is dispositive, we do not reach the remaining issues raised by Nichols.